# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE LANSING COMMUNITY COLLEGE DATE SECURITY INCIDENT LITIGATION | Master No: 1:23-cv-00738-PLM |
| | Hon. Paul L. Maloney |
| | CONSOLIDATED ACTION |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, AND APPOINTMENT OF CLASS <u>REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL</u>

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23"), Plaintiffs, individually and on behalf of all others similarly situated, hereby move this Court for final approval of the class action Settlement that this Court preliminarily approved on August 30, 2024 (ECF No. 43): Plaintiffs respectfully request this Court:

1.      Grant final certification of the Settlement Class for settlement purposes pursuant to Rule 23(a) and (b)(3);

2.      Finally appoint Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette as Class Representatives;

3.      Finally appoint Benajamin F. Johns of Shub & Johns LLC and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Settlement Class Counsel;

4.      Find that Notice met the requirements of Rule 23(c)(2)(B);

5.      Find that the terms of the Settlement Agreement are fair, reasonable, and adequate and are approved, adopted, and incorporated by the Court;

6.      Direct the Parties, their respective attorneys, and the Claims and Settlement Administrator to consummate the Settlement in accordance with the Final Judgment Approving Class Action Settlement ("Final Judgment") and terms of the Settlement Agreement; and

7.      Resolve all claims as to all Parties and Settlement Class Members in

this action and issue the Final Judgment.

This Motion is based on: (1) the contents of this Motion; (2) the Brief in Support of this Motion filed herewith; (3) the Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement, attached as Exhibit B to the Brief in Support; (4) the Declaration of Plaintiffs' Counsel by Benjamin F. Johns in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, attached as Exhibit A to the Brief in Support; (5) the Settlement Agreement and accompanying Exhibits, attached as Exhibit 1 to the Declaration of Plaintiffs' Counsel; (6) Plaintiffs' Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement, Brief in Support, and Supporting and Supplemental Declarations (ECF Nos. 41, 41-2, 41-3); (7) all other pleadings and papers on file in this action; and (8) any oral argument that may be heard by this Court at or prior to the Final Fairness Hearing currently scheduled for January 21, 2025.

For the reasons set forth in the accompanying Brief in Support, Plaintiffs respectfully request that the Court grant final approval to the Class Action Settlement and enter the final approval order, and judgment, in the forms attached to the Brief in Support as Exhibits D, E, respectively. The undersigned counsel have communicated with counsel for Defendant Lansing Community College, who have indicated that they have no opposition to the relief sought in this motion.

Dated: January 7, 2025

Respectfully submitted,

*/s/ Benjamin F. Johns*
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge,
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
bjohns@shublawyers.com
sholbrook@shublawyers.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Proposed Settlement Class Counsel*

E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

Mason A. Barney
Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

-3-

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

*Attorneys for Plaintiffs and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE LANSING COMMUNITY
COLLEGE DATE SECURITY
INCIDENT LITIGATION

Master No: 1:23-cv-00738-PLM

Hon. Paul L. Maloney

CONSOLIDATED ACTION

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT,
## CERTIFICATION OF A SETTLEMENT CLASS, AND
## APPOINTMENT OF CLASS REPRESENTATIVES
## AND SETTLEMENT CLASS COUNSEL

## <u>CONCISE STATEMENT OF ISSUES PRESENTED</u>

1.     Should the Court grant final certification of the Settlement Class pursuant to the Federal Rules of Civil Procedure Rule 23(a) and (b)(3)?

**Plaintiffs Answer:  Yes**

2.     Should the Court finally appoint Plaintiffs Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette as Class Representatives because they fairly and adequately represented the interests of the Settlement Class?

**Plaintiffs Answer:  Yes**

3.     Should the Court finally appoint Benjamin F. Johns of Shub & Johns LLC and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Settlement Class Counsel, finding that Mr. Johns and Mr. Kinger have fairly and adequately represented the interests of the Settlement Class?

**Plaintiffs Answer:  Yes**

4.     Did the Notice program met the requirements of Rule 23(c)(2)(B)?

**Plaintiffs Answer:  Yes**

5.     Should the Court find that the proposed class action settlement is fair, reasonable and adequate and, accordingly, grant final approval to it pursuant to Fed. R. Civ. P. 23(e)(2)?

**Plaintiffs Answer:  Yes**

## <u>MOST CONTROLLING AUTHORITY</u>

- Fed. R. Civ. P. 23

- *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)

- *UAW v. Gen. Motors Corp.*, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)

- Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)

# <u>TABLE OF CONTENTS</u>

CONCISE STATEMENT OF ISSUES PRESENTED..................................................... i

MOST CONTROLLING AUTHORITY .................................................................... ii

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES ..................................................................................v

I.     INTRODUCTION .......................................................................................1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..............2

III.   SETTLEMENT TERMS ..............................................................................4

       A.    Class Definition ..............................................................................4

       B.    Settlement Fund...............................................................................5

       C.    Release..............................................................................................6

       D.    Notice and Administration...............................................................6

       E.    Service Award and Attorneys' Fees and Expenses ..............................7

IV.   THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF
      RULE 23 AND SHOULD BE CERTIFIED ..................................................7

       A.    Rule 23(a) Requirements Are Met for Settlement Purposes ................9

       B.    Rule 23(b) Requirements Are Met for Purposes of Settlement..........13

             1.    Common Questions of Law and Fact Predominate..................14

             2.    A Class Action Is the Superior Method of Adjudication ..........15

V.    THE SETTLEMENT SATISFIES THE STANDARD FOR FINAL
      APPROVAL ...............................................................................................16

       A.    The Rule 23(e)(2) Factors Weigh in Favor of Final Approval............18

             1.    Adequacy of Representation .....................................................18

             2.    Arm's Length Negotiation of Settlement..................................18

             3.    Adequate Relief........................................................................18

             4.    Equal Treatment of Class Members..........................................20

       B.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Final
             Approval.........................................................................................20

             1.    There is No Risk of Fraud or Collusion (*UAW* Factor 1) .........20

             2.    Litigation Through Trial Would be Complex, Costly, and
                   Long (*UAW* Factor 2)................................................................21

3.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*UAW* Factor 3)........22

4.     Plaintiffs Would Face Real Risks if the Case Proceeded (*UAW* Factor 4) ........................................................................23

5.     Class Counsel and Class Representative Support the Settlement (*UAW* Factor 5) .............................................24

6.     The Reaction of Absent Class Members Is Uniformly Positive (*UAW* Factor 6) .............................................24

7.     The Settlement Serves the Public Interest (*UAW* Factor 7) ......28

C.     The Notice Plan Comports with Due Process. ....................................29

VI.    BENJAMIN F. JOHNS AND GARY KLINGER SHOULD BE FINALLY APPOINTED AS SETTLEMENT CLASS COUNSEL .............32

VII.   CONCLUSION ................................................................................33

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ........................................................................ 8, 14, 15, 16

*Beattie v. CenturyTel, Inc.,*
  511 F.3d 554 (6th Cir. 2007) ...................................................... 11, 12, 14

*Bittinger v. Tecumseh Prods. Co.,*
  123 F.3d 877 (6th Cir. 1997) ...................................................................11

*Curry v. SBC Commc'ns, Inc.,*
  250 F.R.D 301 (E.D. Mich. 2008) .......................................................9

*Daoust v. Maru Rest., LLC,*
  No. 17-cv-13879, 2019 WL 1055231 (E.D. Mich. Feb. 20, 2019) ...........8

*Davidson v. Henkel,*
  302 F.R.D. 427 (E.D. Mich. 2014) ....................................................9

*Dick v. Sprint Commc'ns Co. L.P.,*
  297 F.R.D. 283, (W.D. Ky. 2014) ......................................................29

*Eisen v. Carlisle & Jacquelin,*
  417 U.S. 156 (1974) ............................................................... ii, 28, 29

*Fidel v. Farley,*
  534 F.3d 508 (6th Cir. 2008) .............................................................29

*Garner Props & Mgmt. v. City of Inkster,*
  333 F.R.D. 614 (E.D. Mich. 2020) .....................................................20

*George v. Acad. Mortg. Corp.,*
  369 F. Supp. 3d 1356 (N.D. Ga. 2019)............................................27

*Halliday v. Weltman, Weinber & Reis Co., L.P.A.,*
  No. 11–14275, 2013 WL 692856, (E.D. Mich. Feb. 26, 2013)........................16

*Hall v. Bank of Am., N.A.,*
  No. 1:12-cv-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) .................27

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) ................................................. 26, 27

*Hillson v. Kelly Servs. Inc.*,
  No. 2:15-cv-10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017).................18

*Hughes v. Microsoft Corp.*,
  No. C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ..............26

*In re Am. Med. Inc.*,
  75 F.3d 1069 (6th Cir. 1996).....................................................................9, 11

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ...................................................... ii, 24, 28

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
  No. 3:08-md-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ..............30

*In re Onix Group LLC Data Breach Litig.*,
  No. 2:23-cv-02288 (E.D. Pa.)..........................................................................25

*In re Target Customer Data Sec. Breach Litig.*,
  No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ................................................19

*In re The Home Depot*,
  No. 1:14-MD-2583 (N.D. Ga. Mar. 7, 2016) ..................................................19

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) ................................................... 8, 10, 15

*In re Wright & Filippis, LLC Data Sec. Breach Litig.*,
  No. 2:22-cv-12908-SFC, 2024 WL 3083436 (E.D. Mich. June 20, 2024)..3, 31

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford Motor Co.*,
  No. 07-CV-14845, 2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ..............24

*IUE-CWA v. Gen. Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) ..................................................................27

*Kinder v. Nw. Bank*,
  278 F.R.D. 176 (W.D. Mich. 2011)....................................................................9

*Leonhardt v. ArvinMeritor, Inc.*,
  581 F. Supp. 2d 818 (E.D. Mich. 2008)............................................... ii, 17, 20

*Machesney v. Lar-Bev of Howell,  Inc.*,
  317 F.R.D. 47 (E.D. Mich. 2016) ...................................................................14

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ....................27

*Merenda v. VHS of Michigan, Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) ...................................................................13

*Meyers v. Onix Grp., LLC*,
    No. CV 23-2288-KSM, 2023 WL 4630674 (E.D. Pa. July 19, 2023) .............12

*Olden v. Gardner*,
    294 F. App'x 210 (6th Cir. 2008) ......................................................................24

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
    501 F.3d 592 (6th Cir. 2007) ............................................................................15

*Rosado v. eBay, Inc.*,
    No. 5:13-cv-04005, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ................27

*Ryder v. Wells Fargo Bank, N.A.*,
    No. 1:19-CV-638, 2022 WL 223570 (S.D. Ohio Jan. 25, 2022) ....................26

*Sheick v. Auto. Component Carrier, LLC*,
    No. 09-14429, 2010 WL 3070130, (E.D. Mich. Aug. 2, 2010) .......... 20, 21, 22

*Sprague v. General Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ............................................................................11

*UAW v. Gen. Motors Corp.*,
    2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ........................................... ii, 29

*UAW v. Gen. Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) ................................................................... passim

*UAW v. Gen. Motors Corp.*,
    No. 05-CV-73991-DT, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)..........21

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541  (2011)............................................................................ 10, 13

*Williams v. Vukovich*,
    720 F.2d 909 (6th Cir. 1983) .................................................................... ii, 17

*Yaeger v. Subaru of Am., Inc.*,
    No. 1:14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016) ......................26

## Rules & Regulations

Fed. R. Civ. P. 23 ............................................................................. ii, 7, 8

Fed. R. Civ. P. Rule 23(e)(2) .............................................................25

Fed. R. Civ. P. Rule 23(f) ........................................................... 22, 23

Fed. R. Civ. P. 23(a) ...........................................................................8

Fed. R. Civ. P. Rule 23(e) ..................................................................26

Fed. R. Civ. P. 23(a) & (b)(3) ..............................................................1

Fed. R. Civ. P. Rule 23(b)(3) ..................................................... passim

Fed. R. Civ. P. Rule 23(c)(2)(B) ...........................................................1

Fed. R. Civ. P. 23(a)(1) .......................................................................9

Fed. R. Civ. P. Rule 23(g) ..................................................................32

Fed. R. Civ. P. 23(a)(2) .....................................................................10

Fed. R. Civ. P. 23(a)(3) .....................................................................10

Fed. R. Civ. P. 23(a)(4) .....................................................................12

Fed. R. Civ. P. Rule 23(g)(1)(A) ........................................................32

Fed. R. Civ. P. Rule 23(g)(1)(B) ........................................................32

Fed. R. Civ. P. 23(b) .........................................................................13

Fed. R. Civ. P. 23(b)(3) ................................................................9, 14

Fed. R. Civ. P. Rule 23(b) ............................................................8, 13

Fed. R. Civ. P. 23(c)(2)(B) ................................................................29

Fed. R. Civ. P. 23(e) .........................................................................16

Fed. R. Civ. P. 23(e)(2) ............................................................. passim

Fed. R. Civ. P. 23(e)(2)(C) ................................................................19

287 F.R.D. 402, 407–08 .....................................................................15

333 F.R.D. at 623 ...............................................................................11

Fed. R. Civ. P. Rule 23 ............................................................. passim

Fed. R. Civ. P. Rule 23(a)........................................................................ 7, 9, 13, 14

Fed. R. Civ. P. Rule 23(a)(1) ...................................................................9

Fed. R. Civ. P. Rule 23(a)(2) .................................................................10

Fed. R. Civ. P. Rule 23(a)(4) .................................................................12

## I.    INTRODUCTION

On August 30, 2024, this Court preliminarily approved a $1,450,000 non-reversionary, common fund Settlement[1] between Plaintiffs Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette (collectively, "Plaintiffs"), individually and on behalf of the Settlement Class, and Defendant Lansing Community College ("Defendant" or "LCC"). *See* Order Granting Preliminary Approval (ECF No. 43). The Settlement Administrator, Kroll Settlement Administration ("Kroll"), has since implemented the robust, Court-approved notice plan. The Notice program reached approximately 70.7% of the Settlement Class. *See* **Exhibit B**, Declaration of Scott M. Fenwick of Kroll Settlement Administration LLC in Connection with Final Approval of Settlement, ¶ 19 ("Kroll Decl."). The Settlement Administrator first sent out direct Summary Notices, followed by additional notice efforts, including sending supplemental direct notice via email and through a supplemental media notice program. Kroll Decl. ¶¶ 10-19. The reaction from the Settlement Class has been overwhelmingly positive: 12,324 claims have been filed as of January 3, 2025.[2] Kroll Decl. ¶ 21. Moreover,

---

[1] The Settlement Agreement, dated June 18, 2024, and its exhibits are included as Exhibit 1 to the accompanying **Exhibit A** hereto, the Declaration of Plaintiffs' Counsel by Benjamin F. Johns in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Pls' Decl."). The defined terms herein shall have the same definition as those set forth in the Settlement Agreement.

[2] The Claims Period ends on January 20, 2025. Settlement Class Counsel will cause to be filed a Supplemental Declaration in advance of the Final Fairness Hearing with

only 12 requests for exclusion and 1 objection to the Settlement has been received by the (twice-extended) January 3, 2025 Opt-Out and Objection deadline. Kroll Decl. ¶¶ 23-24.

Should the Court grant final approval to the settlement, in excess of 10,000 Settlement Class Members will receive a meaningful cash payment.[3] Plaintiffs respectfully submit that, especially given the challenges detailed herein, the Settlement is an excellent result for the Settlement Class, and the Court should grant final approval.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have previously set forth the relevant background of this litigation in their unopposed motion and renewed motion for preliminary approval, along with their unopposed motion for attorneys' fees, expenses and service awards and, as such, repeat them herein only insofar as relevant to the instant motion. *See* ECF Nos. 38, 41, 50.

This case relates to a data security incident experienced by Lansing Community College between December 25, 2022, and March 15, 2023 (the "Data

---

updated figures on the claims submissions, and immediately post this Declaration to the Settlement Website established by Kroll, to provide the Court and the Settlement Class with an updated accounting.

[3] The Settlement Administrator is still in the process of reviewing and validating Claim Forms, and additional updated claims and distribution information will be provided in a supplemental settlement administrator declaration at least 5 days prior to the Final Fairness Hearing. Kroll Decl. ¶ 21.

Security Incident"). Several putative class actions were filed against LCC beginning in July of 2023. *See* ECF No. 7, PageID.93. Plaintiffs alleged generally that LCC failed to take reasonable measures to safeguard their sensitive information that it had been entrusted with. The Court consolidated these cases on August 2, 2023. ECF No. 13. Thereafter, on September 15, 2023, Plaintiffs filed the operative Consolidated Amended Complaint. *See* ECF No. 18 ("CAC").

Throughout the course of this litigation, the Parties discussed the possibility of exploring an early resolution via mediation. Johns Decl., ¶ 6. On November 22, 2023, the Parties filed a joint motion to stay pending settlement discussions. ECF No. 25. The Court granted this request on November 27, 2023 and issued an order staying the case until April 12, 2024. ECF No. 26. The Parties subsequently agreed to mediate with Thomas R. Behm, Esq. of the Gruel Mills law firm.[4] Johns Decl., ¶ 6. Prior to the mediation, Plaintiffs served LCC with pre-mediation discovery requests seeking information relevant to the Data Security Incident. *Id.*, ¶ 7. The Parties also prepared for mediation by laying out their respective positions to each other and to the mediator by way of exchanging pre-mediation statements. *Id.* On March 26, 2024, the Parties mediated the matter with Mr. Behm. *Id.*, ¶ 9. The Parties ultimately reached an agreement to settle the case for $1,450,000 on April 16, 2024,

---

[4] Mr. Behm is a Voluntary Facilitative Mediation Panel Member of the United States District Court for the Western District of Michigan.

as documented on April 19, 2024. ECF No. 32. Plaintiffs filed their unopposed motion for preliminary approval on June 19, 2024. ECF Nos. 38.

On July 23, 2024, the Court issued an Order denying without prejudice Plaintiffs' motion for preliminary approval. ECF No. 40. In its Order, the Court requested that Plaintiffs explain the discrepancy between the settlement here and the settlement reached in a similar data breach action against Hope College, and to provide the procedural history of the cases upon which the settling parties relied in their preliminary approval brief. *Id.*

On August 9, 2024, Plaintiffs filed a renewed motion addressing the issues raised by the Court in its July 23 Order. *See* ECF No. 41. The Court, in turn, preliminarily approved the settlement on August 30, 2024. ECF No. 43.

## III.  SETTLEMENT TERMS

The terms of the Settlement Agreement ("S.A."), fully explained in Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement (*see* ECF No. 41-2), are briefly summarized below:

### A.  Class Definition

The Settlement will provide substantial relief for the following Settlement Class: "means all natural persons whose Personal Information was compromised in the Data Security Incident." S.A. § 1.42 (exclusions listed therein as well). The

Settlement Class contains approximately 754,853 individuals. Kroll Decl. ¶ 8; *see also* CAC, ¶¶ 8, 27 (alleging a similar class size of approximately 757,832).

### B.    Settlement Fund

LCC has agreed to create a non-reversionary gross Settlement Fund in the amount of $1,450,000, which will be used to make payments to Settlement Class Members and  to pay the costs of Settlement Administration, any Attorneys' Fees and Expenses Award, and any Class Representative Service Awards. S.A. § 3.1. The Settlement Fund provides the following two types of relief:

***Documented Loss Payment:***

Class Members may submit a claim for actual out of pocket losses that are more likely than not related to the Data Security Incident and time spent dealing with it (in accordance with the schedule below), cumulatively up to $2,000.00 per individual, and $150,000 in the aggregate. S.A. § 3.2(a).

***Cash Fund Payment:***

Settlement Class Members may alternatively submit a claim to receive a flat-fee Alternative Cash Payment. The amount of the Alternative Cash Payment will be determined in accordance with the Plan of Allocation in Section 3.7 after amounts sufficient to pay reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, Service Awards approved by the Court, any amounts approved by the Court for the Fee Award and Costs, Taxes, and Approved Claims

for benefits in Sections 3.2(a) (up to the $150,000 cap on for Documented Loss Payments) have been deducted from the Settlement Fund. Settlement Class Members only need to fill out and return a Claim Form to receive an Alternative Cash Payment; no additional documentation is required. S.A. § 3.2(b).

In addition to the benefits described above, the Settlement provides for implementation of significant remedial measures and data security enhancements designed to strength LCC's data and information security. *See* S.A. § 2.

### C.    Release

The Settlement Agreement includes a release that is limited to the claims alleged by Plaintiffs concerning the Data Security Incident, which upon entry of the Final Approval Order will "release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties." S.A., § 4.1.

### D.    Notice and Administration

As set forth in the accompanying Declaration submitted on behalf of the Settlement Administrator, Kroll sent 754,853 Summary Notices to Settlement Class Members on September 30, 2024. Kroll Decl., ¶ 10.[5] Prior to doing so, all mailing addresses were checked against the USPS's National Change of Address ("NCOA") database to ensure Settlement Class Member address information was up-to-date and

---

[5] Additional details about the notice plan are provided in Section V.C. below.

accurately formatted for mailing. *Id.* at ¶ 8. As noted above, Kroll received a mere 12 requests for exclusion. *Id.* at ¶ 24. And Kroll received a single objection. *Id.*

As of January 3, 2025, Kroll has received 502 Claim Forms through the mail and 11,822 Claim Forms filed electronically through the Settlement Website. Kroll Decl., ¶ 21. Kroll is still in the process of reviewing and validating Claim Forms, and additional updated claims and distribution information will be provided in a supplemental settlement administrator declaration by Kroll at least 5 days prior to the Final Fairness Hearing. *Id.*

### E.    Service Award and Attorneys' Fees and Expenses

Plaintiffs also seek attorneys' fees and expenses and Service Awards as detailed in Plaintiffs' Motion for Attorneys' Fees, Costs, Expenses, and Service Awards. *See* ECF No. 50.

## IV.    THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

In its Preliminary Approval Order (ECF No. 43), the Court found that Rule 23's requirements were met and provisionally certified the Settlement Class. Because the proposed Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3), the Court should likewise grant final certification of the Settlement Class.

Class certification requires that plaintiffs satisfy each of Rule 23(a)'s four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality,

and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d 615, 625 (6th Cir. 2007). In addition, the proposed class must meet one of the requirements of Rule 23(b). That the Parties have reached a settlement in this matter is a relevant consideration in the class-certification analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Indeed, "courts should give weight to the parties' consensual decision to settle class action cases, because [Rule 23] favors settlement in class action suits." *Daoust v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 20, 2019) (granting preliminary approval of class action settlement and citing Fed. R. Civ. P. 23); *see also Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Class certification is appropriate where, as here, "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(a)). To certify a class under Rule 23(b)(3), the court must also find

"'that the questions of law or fact common to class members predominate over any
questions affecting only individual members' and that the class action is 'superior to
other available methods' to adjudicate the controversy fairly and efficiently." *Id.*
at 850-51 (quoting Fed. R. Civ. P. 23(b)(3)). As demonstrated below, the Settlement
Class described herein meet all Rule 23(a)'s requirements and the requirements of
Rule 23(b)(3).

### A.    Rule 23(a) Requirements Are Met for Settlement Purposes

***Numerosity and Ascertainability.*** The first prerequisite is that the "class is so
numerous that joinder of all members is impracticable." Rule 23(a)(1); *see also In
re Am. Med. Inc.*, 75  F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed
number used by courts in determining impracticability, "[i]n most cases, a class in
excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301,
310 (E.D. Mich. 2008); *see also Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D.
Mich. 2014) (noting the modern trend requires a minimum of 21 to 40 class
members). The Settlement Class here includes approximately 754,853 individuals
identified by LCC (and then affirmed by Kroll)—thus satisfying the numerosity
requirement for purposes of settlement. *See* Fed. R. Civ. P. 23(a)(1). The Settlement
Class is ascertainable as well. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D.
Mich. 2011) ("[T]he requirement that there be a class will not be deemed satisfied
unless the class description is sufficiently definite so that it is administratively

feasible for the court to determine whether a particular individual is a member.").
Indeed, prior to the filing of this Action, LCC has already identified and provided
notice to the Settlement Class Members that their information may have been
exposed in the Date Security Incident.

**Commonality.** Next, commonality is satisfied under Rule 23(a)(2) when there
are questions of law or fact common to the class—the resolution of which will allow
for a class-wide resolution of the claims. Fed. R. Civ. P. 23(a)(2). Commonality may
be shown when the claims of all class members "depend upon a common
contention," with even a single common question sufficing. *Wal-Mart Stores, Inc.
v. Dukes*, 131 S. Ct. 2541, 2545, 2551 (2011); *Whirlpool*, 722 F.3d at 853. The
common contention must be capable of class-wide resolution and the
"determination of its truth or falsity will resolve an issue that is central to the validity
of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545, 2551. Here,
Plaintiffs' claims turn on the adequacy of LCC's data security in protecting
Settlement Class Members' Private Information. Evidence required to resolve that
claim does not vary among class members, and so can be fairly resolved, at least for
purposes of settlement, for all Settlement Class Members at once.

**Typicality.** Typicality requires that a class representative has claims that are
typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy
the typicality requirement where their "claim arises from the same event or practice

-10-

or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). "In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are 'aligned with those of the represented group,' such that 'in pursuing  his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner*, 333 F.R.D. at 623 (quoting *In re Am. Med.*, 75 F.3d at 1082). Plaintiffs allege that each individual here was impacted by the same allegedly inadequate data security that Plaintiffs allege harmed the rest of the Settlement Class, as notified by their receipt of Defendant's Notice indicating that their Private Information may have been compromised as a result of the Date Security Incident. Thus, Plaintiffs' pursuit of their own claims here will necessarily advance the interests of the Settlement Class, satisfying  the typicality requirement.

*Adequacy.* Class representatives under Rule 23(a)(4) must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. Class representatives must be part of the class, possess the same interests, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie*, 511 F.3d at 562. Class Representatives here have no conflicts with the Settlement Class, have participated actively in the case, and are represented by attorneys experienced in class action litigation, including data breach cases.

Proposed Settlement Class Counsel and Additional Counsel for the Settlement Class (collectively, "Plaintiffs' Counsel") here regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach actions as well as other class actions. *See Meyers v. Onix Grp., LLC*, No. CV 23-2288-KSM, 2023 WL 4630674, at *2 (E.D. Pa. July 19, 2023) ("the Court finds that Mr. Johns . . . possess[es] extensive experience with class actions and the types of claims asserted, as well as considerable knowledge of the applicable law in this case. Mr. Johns, specifically, has almost 20 years of experience with complex class action cases and has been

appointed Lead Counsel in data breach cases over a dozen times in various jurisdictions across the country[.]") (citations omitted). Plaintiffs' Counsel are well suited to advocate on behalf of the Class. Plaintiffs' Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims and that of the Settlement Class, obtaining, reviewing and analyzing Plaintiffs' detailed personal records, analyzing LCC's records, privacy policies, any remedial steps, scope and number impacted by the Data Security Incident, LCC's financial condition, participating in mediation, negotiating a settlement that provides meaningful relief for the Settlement Class despite the substantial litigation risks that were present, and working collaboratively with LCC's counsel and the Settlement Administrator on efforts to provide notice to the Settlement Class. Johns Decl., ¶ 21. In sum, Plaintiffs' Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Settlement Class throughout the settlement administration process.

### B.    Rule 23(b) Requirements Are Met for Purposes of Settlement

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for the Court to certify the proposed class. Fed. R. Civ. P. 23(b); *see also Dukes*, 131 S. Ct. at 2548; *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over

-13-

individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. And the superiority requirement of Rule 23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). As explained below, the proposed Settlement Class meets these requirements.

### 1.    Common Questions of Law and Fact Predominate

Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61

(E.D. Mich. 2016). As such, predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Data breach cases, such as the action here, present multiple questions of law and fact that are central to liability and thus predominate over any issues affecting individual class members. LCC's alleged course of conduct was uniform across the entire Settlement Class, engaging in a single course of conduct with respect to all members of the Settlement Class, so their claims "will prevail or fail in unison." *Whirlpool*, 722 F.3d at 859. And since class-wide determination of this issue will be the same for all, i.e., determining whether any class member has a right of recovery, the predominance requirement is readily satisfied.

## 2. A Class Action Is the Superior Method of Adjudication

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Such is especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute for individual

-15-

Settlement Class Members here is too small, the technical issues involved too complex, and the expert testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of adequate counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[6] Thus, the Court should certify the Settlement Class pursuant to Rule 23(b)(3). LCC does not oppose class certification for settlement purposes.

## V.    THE SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL

Settlement of class action suits is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11–14275, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v.*

---

[6] Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of manageability relating to trial. *See Amchem,* 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

*Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *See UAW*, 497 F.4d at 632; *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* As described below, each factor

-17-

affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

## A.    The Rule 23(e)(2) Factors Weigh in Favor of Final Approval

### 1.    Adequacy of Representation

Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See supra* § IV(A); *see also* 4 *Newberg and Rubenstein on Class Actions* § 13:48 (6th ed.).

### 2.    Arm's Length Negotiation of Settlement

The Parties negotiated the Agreement at arm's length. After conducting informal discovery, the Parties settled through a neutral mediator who is a Voluntary Facilitative Mediation Panel Member of the United States District Court for the Western District of Michigan,  Thomas R. Behm,  and there is no evidence of fraud or collusion. *See supra* § II. Therefore, the second factor is satisfied. *See Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (finding that settlement agreement was negotiated at arm's length because procedural history reflected non-collusive negotiations, informal and formal discovery, and multiple mediations sessions).

### 3.    Adequate Relief

The adequacy of relief considers: (i) the costs, risk, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any

proposed attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2)(C).

The relief sought is more than adequate. Plaintiffs acknowledge that more litigation would be complex, costly, and likely continue for several years with no guarantee of relief. Johns Decl., ¶¶ 15, 33. As described in Plaintiffs' Renewed Motion, the Settlement Agreement secures a per-class member recovery of $1.91 here which exceeds or, at a minimum, is on par with, comparable data security class actions. *See In re The Home Depot*, No. 1:14-MD-2583, ECF No. 181-2 (N.D. Ga. Mar. 7, 2016) (approximately $0.51 per class member); *In re Target Customer Data Sec. Breach Litig.,* No. MDL 14-2522, (D. Minn. Mar. 18, 2015) ($0.17 per class member). As discussed in Plaintiffs' Renewed Motion for Preliminary Approval, the recovery achieved here is reasonable, not only because Social Security numbers were purportedly not actually exfiltrated, but because Plaintiffs faced LCC's unique governmental tort immunity defenses not at issue in the reasonable comparators listed above.[7] *See* ECF No. 41.

The proposed method of distributing relief to the Settlement Class, including the processing of its claims, ensures that each member of the Settlement Class can obtain relief without high administrative burdens. And the proposed attorneys' fees

---

[7] The class member average is calculated on a gross per class member basis.

-19-

will not exceed 33 1/3% of the Settlement Fund, which is adequate. *See Garner Props & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020).

### 4.    Equal Treatment of Class Members

As detailed in § III(2), the Settlement Agreement provides each Settlement Class Member the opportunity for one of the following: (1) Documented Loss Payment; or (2) Alternative Cash Payment. Accordingly, each Settlement Class Member has the same opportunity to participate in the Settlement.

### B.    The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.

### 1.    There is No Risk of Fraud or Collusion (*UAW* Factor 1)

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. Where, as here, a settlement was reached through arm's-length negotiations through an experienced mediator, there is no evidence of fraud or collusion. *See, e.g., Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). Here, the Settlement was obtained through the persistent help and oversight of a respected mediator, Mr.

Behm, that was conducted at arms-length after informal discovery. This factor, therefore, strongly supports approval. Johns Decl., ¶ 9.

### 2. Litigation Through Trial Would be Complex, Costly, and Long (*UAW* Factor 2)

The second UAW factor is "the complexity, expense and likely duration of the  litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW v. Gen. Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *17 (E.D. Mich. Mar. 31, 2006). This case is no exception. As discussed above, the Parties have engaged in informal discovery and a private mediation. Johns Decl., ¶¶ 7-9. The next steps in the litigation would include a contested motion to dismiss, and contested motions for class certification and summary judgment, which would be at a minimum costly and time-consuming for the Parties and the Court. *Id.*, ¶ 15. Undoubtedly, further litigation would create numerous risks that a litigation class could not be certified and/or that the Settlement Class  would not recover nothing at all. *Id.*, ¶¶ 5, 15, 33.

Defendant indicated that it would continue to assert numerous defenses on the merits. Plaintiffs' Counsel believes Defendant would have moved to dismiss the case under Rules 12(b)(1) and 12(b)(6) on the basis of lack of standing and failure to state a claim. *Id.*, ¶ 15. And LCC asserted the defense of governmental tort immunity pursuant to Michigan's Governmental Tort Liability Act, MCL §691.1401, which

presented unique challenges. *Id.*, ¶ 4. Plaintiffs' Counsel is also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. *Id.*, ¶ 15. Looking beyond trial, Class Counsel are also aware that Defendant could appeal the merits of any adverse decision, including any class certification under Rule 23(f). *Id.*

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Settlement Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeal(s), and provides certainty whereas litigation does not and could result in defeat for the Settlement Class on a motion to dismiss or on class certification, at summary judgment, at trial, or on appeal. Consequently, this *UAW* factor plainly weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*UAW* Factor 3)

The third *UAW* Factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged information that would have contained the same information produced in formal discovery related to the issues of class certification and summary judgment; and thus, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. Johns Decl., ¶¶ 7-8. Plaintiffs' Counsel's experiences in similar matters, as well as the efforts made by counsel on both sides, confirms that they are sufficiently well

apprised of the facts of this action and their respective cases in order to make an intelligent analysis of the Settlement.

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*UAW* Factor 4)

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. As stated above, Defendant would have moved to dismiss the CAC, vigorously contested class certification, and moved for summary judgment on various issues. Johns Decl., ¶ 15. The risk of maintaining class status through trial is also present. *Id.* At the time of Settlement, the Court had not yet certified the proposed Settlement Class, and the Parties anticipated that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing—likely years down the line. *Id.* Defendant would also likely argue that (1) individual questions preclude class certification; (2) a class action is not a superior method to resolve Plaintiffs' claims; and (3) a class trial would not be manageable. It is entirely plausible that Defendant would prevail on one, if not all, defenses. Johns Decl., ¶¶ 4, 5, 15.

Even if the Court did certify a Rule 23 class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. *Id.* Risk, expense, and delay permeate such a process. Johns Decl., ¶ 15. Moreover, in Class Counsel's experience, these additional steps in litigation can take years to resolve. *Id.* The proposed Settlement

eliminates this risk, expense, and delay and awards Settlement Class Members payment promptly. This *UAW* factor thus favors final approval.

### 5.    Class Counsel and Class Representative Support the Settlement (*UAW* Factor 5)

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *18 (E.D. Mich. Aug. 29, 2008). Here, both Class Counsel and Plaintiffs support the Settlement. *See* Johns Decl., ¶ 32. They do so, because as explained, this Settlement is an excellent result for Settlement Class Members in light of defenses likely to be raised by Defendant. This *UAW* factor therefore also favors final approval.

### 6.    The Reaction of Absent Class Members Is Uniformly Positive (*UAW* Factor 6)

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of

11,000 class members objected). But here, as of January 3, 2025, only twelve (12) Settlement Class Members have requested exclusion out of a total of 754,853 Settlement Class Members, and only a single objection has been filed. Kroll Decl., ¶¶ 8, 24.

A single objection to the Settlement was filed on December 2, 2024 by interested party GwanJun Kim. ECF No. 53. First, Objector Kim requests that the entire Settlement Fund should be awarded to Objector Kim. This would be plainly unfair to the rest of the Settlement Class Members. Additionally, Objector Kim, citing Rule 23(e)(2), writes that there is risk of fraud or collusion, that the Settlement is not in the best public interest, and that class members are not treated equitably relative to each other. ECF No. 53 PageID.1138. However, Objector Kim fails to support these statements beyond asserting that the Settlement is not fair and not enough. *Id.*

But courts have repeatedly rejected objections premised on the notion that the settlement recovery should have been "more" or "better." *See In re Onix Group LLC Data Breach Litig.*, No. 2:23-cv-02288 (E.D. Pa.) (ECF No. 57) (noting that the argument "that the settlement should have been better—has been frequently rejected by courts" and overruling objection because "[a]t each stage, the Court found that this settlement was fair, reasonable, and adequate, especially considering the substantial challenges that Plaintiffs would face if this litigation were to continue");

-25-

*Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *10 (W.D. Wash. Mar. 26, 2001) ("An objection that the settlement 'could have been better . . . does not mean the settlement presented [is] not fair, reasonable or adequate.'") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "Because '[s]ettlement is the offspring of compromise' the appropriate inquiry for a court reviewing a settlement pursuant to Rule 23(e) is 'not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Id. See also Yaeger v. Subaru of Am., Inc.*, No. 1:14-cv-4490, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) (rejecting objections which suggested that the court "should insert other, more favorable terms into the proposed settlement" and recognizing that "[t]here is no middle ground of inserting or deleting terms at the request of an objector based on the judge's conception of what would be more fair, reasonable, or adequate."); s*ee also Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (rejecting an objection that "generally assert[ed] that the payment amount . . . is too low give[n] her individual experience with [the defendant]" where the objector did "not include any documentation to support her claim that she [] is due any amount more than she would receive under the Settlement," and also where the objector "had the ability to opt out of the Settlement if she believed she should receive a higher individual payment from [the defendant] than that made available under the Settlement) (citing

-26-

*Rosado v. eBay, Inc.*, No. 5:13-cv-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016)).

Moreover, the fact that only one individual has filed an objection, out of 754,853 Settlement Class Members, is an indication of the settlement's fairness. Kroll Decl. ¶¶ 8, 21; *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases). It is also noteworthy that none of the attorneys general and other governmental officials who received notification of the settlement pursuant to the Class Action Fairness Act have filed objections. *See George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) ("Not one CAFA notice recipient objected to the settlement, which also weighs in favor of its approval here.") (citing *Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014)).

Thus, this *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g.*, *Hanlon*, 150 F.3d at 1027 ("[T]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). The settlement should be approved, notwithstanding Objector Kim's dissatisfaction with the value of the Settlement. The

Court should overrule the objection because it lacks merit, based on the overwhelming positive reaction of the Settlement Class and the reasonableness of the result achieved.

### 7.    The Settlement Serves the Public Interest (*UAW* Factor 7)

The seventh and final *UAW* factor is the "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (internal quotations omitted). Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the privacy of individuals' most personal information. In fact, class action litigation in this area is the most realistic means of obtaining recovery on behalf of the entire Settlement Class. This factor therefore supports final approval.

All of the *UAW* factors weigh in favor of approval, and the Settlement Agreement on its face is fair, reasonable, and adequate, and not a product of collusion. The Court should therefore grant final approval.

### C.    The Notice Plan Comports with Due Process.

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen*, 417 U.S. at 173. Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 2006 WL 891151, at *33 (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014).

At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW*, 497 F.3d at 630 (citation omitted).

That said, Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also*

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class).

The notice plan here meets the due process standard, with notice efforts reaching approximately 70.7% of the identified Settlement Class members. Kroll Decl., ¶ 19. As the notice plan was executed by the Settlement Administrator, it became apparent that Kroll was receiving back an outsized number of undeliverable mailings. Kroll Decl., ¶ 12. Following dissemination of this information among Counsel for the Parties, the Settlement Administrator, along with Counsel for the Parties, efficiently organized efforts to expand the breadth of the notice to the Settlement Class while endeavoring to preserve the maximum value of the Settlement Fund. Johns Decl. ¶ 21; Kroll Decl., ¶ 12. And in conjunction with the foregoing, the Parties sought to extend the Opt-Out, Objections, and Claims deadlines. ECF Nos. 45, 54. These additional notice efforts included sending out direct class notice via email and disseminating additional notice via a supplemental media campaign. Kroll Decl., ¶¶ 13-19. These efforts ultimately led to approximately 70.7% of the Settlement Class being reached. Kroll Decl., ¶ 19.

A further indicator of the reasonableness of the Notice Plan is that, to date, Kroll has received 12,324 claims from Settlement Class Members, which represents

a 1.63% claims rate, which is in line with other settlements of this size and type, including those with a substantially higher notice percentage. *See, e.g.*, *In re Wright & Filippis, LLC Data Sec. Breach Litig.*, No. 2:22-cv-12908-SFC, 2024 WL 3083436 (E.D. Mich. June 20, 2024) (granting final approval in data breach case with a claims rate of 1.56% in 787,766 person data breach, with notice reaching 85.1% of the class) & *In re Wright*, ECF No. 47 (attached as **Exhibit C** hereto).

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 32, PageID.1036. That plan has now been fully carried out by Settlement Administrator Kroll, including several enhancements to maximize class member reach, including additional notice dissemination via email and through publication. Kroll Decl., ¶¶ 13-19.

Pursuant to the Settlement Agreement, LCC provided Kroll with two data files containing the names and last known mailing addresses of identified Settlement Class Members. Kroll Decl., ¶ 8.[8] A toll-free telephone number was established, which allowed callers to talk to a *live operator*, in addition to having the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package (Long Form Notice and Claim Form) be mailed to

---

[8] Kroll also notified the appropriate state and federal officials pursuant to CAFA. *Id.*, ¶ 4.

them. *Id.*, ¶ 6. Further, on the Settlement Website established by Kroll, Settlement Class Members were able to submit a change of address, access important court filings, and review deadlines and answers to frequently asked questions. *Id.*, ¶ 7. Kroll, in total, received 12,324 Claim Forms to date. *Id.*, ¶ 21.[9]

Given the reach of the notice and comprehensive information provided, the requirements of Due Process and Rule 23 are met.

## VI.   BENJAMIN F. JOHNS AND GARY KLINGER SHOULD BE FINALLY APPOINTED AS SETTLEMENT CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv). *See also*, *supra* § IV(A).

As stated in this Court's Preliminary Approval Order, Mr. Johns and Mr. Klinger meet the requirements of Rule 23(g) (ECF No. 43, PageID.1035); Mr. Johns

---

[9] The claim filing period remains open until January 20, 2025. A supplemental declaration by Kroll will be filed by January 15, 2025, providing the Court and Settlement Class Members (via posting on the Settlement Website) with updated claims and distribution information ahead of the Final Fairness Hearing.

and Mr. Klinger have extensive experience in prosecuting data breach class actions and other complex cases. Johns Decl., ¶ 33. Further, Proposed Settlement Class Counsel have diligently investigated and prosecuted this case by dedicating substantial resources to it, successfully negotiating this Settlement, and continuously working on behalf of the Settlement Class to ensure proper effectuation of the Notice Plan. *See* S.A.;  CAC; Johns Decl. ¶ 21. Thus, the Court should finally appoint Benjamin F. Johns of Shub & Johns LLC and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, LLC as Settlement Class Counsel.

## VII.  CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Final Approval of Class Action Settlement, enter Final Judgment in the form submitted herewith, and overrule the objection to Settlement Agreement.[10]

Dated: January 7, 2025                      Respectfully submitted,

*/s/ Benjamin F. Johns*
Benjamin F. Johns
Samantha E. Holbrook
**SHUB & JOHNS LLC**
Four Tower Bridge,
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
bjohns@shublawyers.com

---

[10] Attached hereto are copies of the proposed Final Approval Order (**Exhibit D**) and the proposed Final Judgment (**Exhibit E**).

sholbrook@shublawyers.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

*Proposed Settlement Class Counsel*

E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

Mason A. Barney
Tyler J. Bean
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com

William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
wbf@federmanlaw.com

*Attorneys for Plaintiffs and the Putative*
*Class*

## <u>CERTIFICATE REGARDING WORD COUNT</u>

Plaintiffs, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii), used 7,828 words[11] in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

*/s/ Benjamin F. Johns*
Benjamin F. Johns

---

[11] Since a motion for final approval of class action settlement may ultimately result in the case being fully disposed of, Plaintiffs aver that the word count provided for under W.D. Mich. LCivR 7.2(b)(i), Dispositive Motions- permitting a maximum of 10,800 words, applies here.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2025, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Benjamin F. Johns*
Benjamin F. Johns