# *Exhibit "A"*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| IN RE LANSING COMMUNITY COLLEGE DATA BREACH LITIGATION | Master File No. 1:23-cv-00738-PLM<br><br>Hon. Paul L. Maloney<br><br>CONSOLIDATED ACTION |

## DECLARATION OF PLAINTIFFS' COUNSEL BY BENJAMIN F. JOHNS IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Benjamin F. Johns, on behalf of all Plaintiffs' Counsel, declare:

1.      I am an attorney admitted to practice before this Court, as well as before the Supreme Courts of Pennsylvania and New Jersey. I make the foregoing declaration based upon personal knowledge and, if compelled to testify as a witness, would testify competently thereto.

2.      This Declaration is made by and through Plaintiffs' Counsel in the above-captioned case. This Declaration is made in support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement[1] with Defendant, Lansing Community College, ("LCC" or "Defendant") in connection with a data security incident experienced by LCC between December 25, 2022, and March 15, 2023.

---

[1] Full title of Motion: Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Certification of a Settlement Class, and Appointment of Class Representatives and Settlement Class Counsel.

This Declaration explains the bases for the settlement, including the significant relief it affords the Settlement Class. Plaintiffs' Counsel have personal knowledge of the facts in this Declaration and could testify to them if called on to do so.

3.     Prior to filing these cases, Plaintiffs' Counsel vigorously and aggressively gathered all the information that was available regarding LCC and the alleged Data Security Incident—including publicly-available documents concerning announcements of the Data Security Incident and notice of the Data Security Incident to affected individuals.

4.     And prior to filing Plaintiffs' Consolidated Complaint, Plaintiffs received a letter from LCC making Plaintiffs aware that LCC is a governmental agency with immunity from tort liability under Michigan's Governmental Tort Liability Act, MCL 691.1401, *et. seq.* Plaintiffs' Counsel conducted significant research to oppose this defense and made a well-founded and well-reasoned judgment that none of the exceptions to Michigan's Governmental Tort Liability Act were applicable here. Due to this claim's dispositive defense, Plaintiffs did not believe they could assert a claim for negligence in the Consolidated Complaint in good faith, which significantly reduced the value of any settlement likely to be agreed upon in this case. Thus, Plaintiffs factored in the absence of a viable negligence claim when negotiating a lower Settlement Fund amount achieved here.

5.      Plaintiffs also understood that they faced a substantial risk of dismissal due to alleged lack of Article III standing. This Court previously granted a motion to dismiss based on lack of Article III standing with facts markedly similar to those here. *Shepherd v. Cancer & Hematology Centers of W. Michigan, P.C.*, 2023 WL 4056342 (W.D. Mich. Feb. 28, 2023).

6.      Throughout the course of this litigation, the Parties discussed the possibility of exploring early resolution via mediation. And the Settlement here came about as the result of protracted, arms' length negotiations, including a full day mediation session with Thomas R. Behm on March 26, 2024. Notably, Mr. Behm is a Voluntary Facilitative Mediation Panel Member of the United States District Court for the Western District of Michigan.

7.      Prior to the mediation, Plaintiffs served LCC with written pre-mediation discovery requests seeking information relevant to the Data Security Incident. The Parties also prepared for mediation by laying out their respective positions on the litigation, including with respect to the merits, class certification and settlement, to each other and to the mediator by way of exchanging pre-mediation statements.

8.      Plaintiffs' Counsel thoroughly evaluated this information and took it into consideration in their analysis of damages, and their evaluation of the strengths and weaknesses of their position in this Litigation. Through this process, Plaintiffs'

Counsel came to understand the size of the Settlement Class, the issues at hand, and ultimately obtain an excellent settlement for Class Members. Plaintiffs also learned through this process that there were limited insurance proceeds available to fund a settlement here, which placed a financial strain on any settlement value. Plaintiffs were cognizant of this fact prior to and during mediation when negotiating the value of the settlement.

9.    The full day mediation session with Mr. Behm took place on March 26, 2024. The Parties were unable to reach a resolution that day, but the Parties maintained an open dialogue and continued to negotiate. The Parties ultimately reached an agreement in principle on April 16, 2024, when both sides accepted a mediator's proposal made by Mr. Behm, resulting in a $1,450,000 non-reversionary common fund settlement to be used as the exclusive source of payment for Approved Claims, administrator expenses, and any Service Awards and Fee Award.

10.    After hard-fought negotiations, Plaintiffs' Counsel negotiated to secure LCC's remaining insurance policy proceeds for the benefit of Plaintiffs and the Class. Further litigation by Plaintiffs' Counsel would have only reduced the insurance proceeds and ultimately reduced the benefits available to Plaintiffs and the Settlement Class. This was a very important factor Plaintiffs' Counsel considered when negotiating the settlement and in ultimately making the decision to accept the

mediator's proposal. Plaintiffs' Counsel are confident that this is the best Settlement that could be achieved under the financial and legal constraints posed.

11.    For several months after reaching a settlement in principle, the Parties continued to negotiate in good faith and at arms' length the terms of the Settlement Agreement and drafted the Settlement Agreement and accompanying Notice documents and other exhibits, attached as **Exhibit 1** hereto.

12.    While negotiations were always collegial and professional between the Parties, there is no doubt that the negotiations were also adversarial in nature, with both Parties strongly advocating their respective client's positions.

13.    The Settlement provides Settlement Class Members with significant benefits that would not otherwise be available to them unless a settlement was reached. Settlement Class Members were able to select one of two Settlement relief options: a Documented Loss Payment or an Alternative Cash Payment. The amount of the Documented Loss Payments are capped at $150,000 in the aggregate. This alleviated any concern that the Settlement Fund may be potentially exhausted before other selected Settlement Benefits could be paid. Even if the maximum Documented Loss Payment claims were approved, there would still be hundreds of thousands of dollars remaining to pay the Alternative Cash Payment claims.

14.    In addition to the monetary benefits the Settlement makes available to Settlement Class Members, Plaintiffs have received additional concessions – LCC

has begun, and will continue, to undertake steps to enhance the security of its systems and, thus, the Settlement Class's Private Information.

15. Plaintiffs recognize that, absent agreement to a settlement, further pursuit of this matter would be risky, especially given LCC's tort defense, costly, and would likely continue for several years with no guarantee of relief. If an agreement to settle had not been reached in this case, the next steps in the litigation would include a contested motion to dismiss and then contested motions for class certification and summary judgment, which would be at a minimum costly and time-consuming for the Parties and the Court, let alone there would be no guarantee of success for Plaintiffs. Plaintiffs' Counsel is also aware that Defendant would prepare a competent defense at trial. Looking beyond trial, Plaintiffs' Counsel are also aware that Defendant could appeal the merits of any adverse decision, including any class certification under Rule 23(f).

16. The Settlement Agreement and the exhibits thereto were ultimately finalized and executed on June 18, 2024.

17. Plaintiffs filed their Unopposed Motion for Preliminary Approval of Class Action Settlement on June 19, 2024. ECF No. 38.

18. On July 23, 2024, the Court issued an Order denying without prejudice Plaintiffs motion, requiring further information to clear up questions before the Court could rule on the motion. ECF No. 40.

19.    On August 9, 2024, Plaintiffs filed a renewed motion addressing the issues raised by the Court in its July 23, 2024 order. *See* ECF No. 41. The Court, in turn, on August 30, 2024, preliminarily approved the settlement, approved the notice plan, appointed Benjamin F. Johns of Shub & Johns LLC and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman as Proposed Settlement Class Counsel, appointed Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette as Class Representatives, and appointed Kroll Settlement Administration ("Kroll") as Settlement Administrator. ECF No. 43.

20.    The court-approved Notice Program was designed to provide reasonable notice of this class action and Settlement Class Members' rights under the Settlement Agreement. The Short Form Notice provides clear, concise information about the Settlement. The Long Form Notice explains the terms of the Settlement Agreement and provides contact information for Proposed Settlement Class Counsel, and information about the Settlement in plain terms, including explanations for the different options available to Settlement Class Members.

21.    The projected Administrative Expenses for notice and claims administration was initially estimated to be approximately $419,082. ECF No. 41-3, PageID.936. Due to an outsized number of undeliverable mailings, the projected Administrative Expenses for notice and claim administration has now risen by an amount between $100,000-200,000. As this issue arose, Counsel for the Parties,

along with the Settlement Administrator, efficiently organized efforts to expand the breadth of the notice to the Settlement Class while endeavoring to preserve the maximum value of the Settlement Fund.[2] These efforts included sending out the class notice via email and disseminating additional notice via a media campaign.

22.    Throughout the claims process, Settlement Class Members have been able to submit claims and review documents in this action through an easy-to-read Settlement Website and, notably, have any of their questions answered through access to a live operator at Kroll.

23.    The claims period was structured to give Settlement Class Members sufficient time to review the Settlement documents, and consider submitting any objection or exclusion request – including Plaintiff's Motion for Attorneys' Fees, Costs, and Service Awards to Class Representatives, which was filed on November 22, 2024, ECF No. 50. This filing was at least fourteen (14) days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement.

24.    And on November 15, 2024, Plaintiffs filed a joint motion to extend deadlines for filing a claim, an objection, or exclusion by three weeks, which would provide Settlement Class Members with additional time to consider their options. ECF No. 45.

---

[2] As an alternative, the cost provided by the Settlement Administrator to trace, print, and re-mail the hundreds of thousands of undeliverable Summary Notices was projected to nearly exhaust the remainder of the Settlement Fund.

25.    On November 18, 2024, the Court granted Plaintiffs' request, extending certain deadlines by three weeks – setting December 20, 2024 as the new deadline for objections and exclusions, and January 20, 2025 as the new deadline for filing a claim. ECF No. 47.

26.    Further, to provide even more time for Settlement Class Members to consider the Settlement and voice any objection or exclude themselves, on December 19, 2024, Plaintiffs filed a Joint Motion for Second Extension to Claims Administration Schedule, requesting that the Court provide two additional weeks for Settlement Class Members to file an objection or request exclusion. ECF No. 54. On December 30, 2024, the Court approved this request. ECF No. 56.

27.    As of January 3, 2025, with a few weeks remaining prior to the January 20, 2025 claims period deadline, 12,324 Settlement Class Members have submitted claims, 11,822 through the Settlement Website and 502 by mail – producing a claims rate of 1.63%, in line with other data breaches of this size. Kroll Decl. ¶ 21.

28.    The Settlement Administrator is still in the process of reviewing and validating Claim Forms, and additional updated claims and distribution information will be provided in a supplemental settlement administrator declaration at least 5 days prior to the Final Fairness Hearing. Kroll Decl. ¶ 21.

29.    Also, as of the January 3, 2025 deadline for Opt-Outs and Objections, out of the hundreds of thousands of Settlement Class Members, only 12 have

requested exclusion, and only one has filed an objection. Kroll Decl. ¶¶ 23-24; *see also* ECF No. 53 (objection). And, as discussed in Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, this one objection raises no meritorious arguments.

30.    For their efforts on behalf of the Class, Plaintiffs' Counsel has petitioned the Court for an award of attorneys' fees not to exceed one third of the Settlement Fund (as well as reimbursement for reasonable costs and expenses, which counsel estimate will not exceed $50,000). ECF No. 50. This amount was negotiated after the primary terms of the Settlement were negotiated. *Id.*

31.    Plaintiffs' Counsel have petitioned the Court for a Service Award of $1,500 each for the Class Representatives. *Id.* The Service Awards are meant to recognize Plaintiffs for their efforts on behalf of the Settlement Class, including assisting in the investigation of the case, reviewing the pleadings, sitting through multiple vetting interviews, providing supporting documentation and personal information, remaining available for consultation throughout the mediation and settlement negotiations, answering counsel's many questions, and reviewing the terms of the Settlement Agreement. The Service Awards were negotiated after the primary terms of the Settlement were negotiated.

32.    It is the opinion of Plaintiffs' Counsel that the Settlement is fair, reasonable, and adequate and provides significant benefits for the Class

Representatives and Settlement Class Members, and Plaintiffs' Counsel strongly support the Settlement. The Class Representatives also strongly support this Settlement.

33. Plaintiffs' Counsel's combined decades of experience representing individuals in complex class actions—including data security actions—contributed to an awareness of the Settlement Class's settlement leverage, as well as the needs of the Class Representatives and the Settlement Class. *See* ECF No. 41-2 (firm resumes). Plaintiffs' Counsel believe that Plaintiffs would ultimately prevail in the litigation on a class-wide basis. However, Plaintiffs' Counsel are also aware of the litigation risks, including Defendant's position that it is immune from tort liability given its status as a public entity, and that a successful outcome is uncertain and would be achieved, if at all, only after prolonged, arduous litigation with the attendant risk of drawn-out appeals.

34. Plaintiffs' Counsel believes this Settlement is a positive resolution for the Settlement Class and falls comfortably within the range of reasonableness and represents a fair and reasonable discount from the potential recovery. It is also Plaintiffs' Counsel's considered opinion that the Short Form Notice and Long Form Notice accurately and plainly explain the Settlement Benefits and how to obtain them, offer a clear opportunity for members of the Settlement Class to exclude

themselves if they so choose, and provide a mechanism for the Settlement Class to share their opinions about the Settlement with the Court.

35.    Individually and on behalf of all Plaintiffs' Counsel, I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 7th day of January 2025, in Conshohocken, Pennsylvania.

> */s/ Benjamin F. Johns*
> Benjamin F. Johns
> Samantha E. Holbrook
> **SHUB & JOHNS LLC**
> Four Tower Bridge,
> 200 Barr Harbor Drive, Ste 400
> Conshohocken, PA 19428
> T: (610) 477-8380
> bjohns@shublawyers.com
> sholbrook@shublawyers.com
>
> *Proposed Settlement Class Counsel*

# *Exhibit "1"*

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement" or "Settlement Agreement"), dated as of the date below, is made and entered into by and among Plaintiffs, for themselves individually and on behalf of the Settlement Class (as defined below), and Defendant Lansing Community College ("Defendant" or "LCC"), collectively ("the Parties"). This Settlement Agreement fully and finally resolves and settles all of Plaintiffs' and the Settlement Class's Released Claims, upon and subject to the terms and conditions hereof, and subject to the Court's approval.

## RECITALS

**WHEREAS**, in or around March 14, 2023, LCC became aware of a data security incident that involved an unauthorized and unknown threat actor hacking LCC's internal computer systems (hereinafter the "Data Security Incident").

**WHEREAS,** a subsequent investigation determined that, during the Data Security Incident, an unauthorized actor had accessed LCC's network between December 25, 2022 and March 15, 2023, and was able to access the personal data of Plaintiffs and those similarly situated.

**WHEREAS**, the information contained in the accessed network included names and Social Security numbers relating to LCC employees, students, potential students, vendors, and others (collectively, "Personal Information").

**WHEREAS,** LCC began notifying impacted individuals about the Data Security Incident on or around June 30, 2023, despite there being no evidence that the unauthorized threat actor exfiltrated any Personal Information from LCC's network.

**WHEREAS,** beginning in July 2023, four putative class action lawsuits were filed in this Court against LCC related to the Data Security Incident.

**WHEREAS**, on August 2, 2023, the Court issued an order consolidating the various actions related to the Data Security Incident pursuant to Fed. R. Civ. P. 42 and appointing Benjamin F. Johns of Shub & Johns LLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as interim co-lead Plaintiffs' counsel pursuant to Fed. R. Civ. P. 23(g).

**WHEREAS**, on September 15, 2023, Plaintiffs filed the operative Consolidated Amended Complaint.

**WHEREAS,** on October 12, 2023, LCC filed a motion to dismiss the Consolidated Amended Complaint, with Plaintiffs filing their response and opposition on November 10, 2023.

**WHEREAS**, on March 26, 2024, the Parties participated in mediation with Thomas R. Behm, Esquire, a well-regarded Michigan mediator.

**WHEREAS**, in preparation for the scheduled mediation, the Parties exchanged certain confidential information and documents. The Parties also prepared for mediation by laying out

their respective positions on the litigation, including with respect to the merits, class certification and settlement, to each other and to the mediator.

**WHEREAS**, the March 26, 2024 mediation assisted the Parties in getting closer to reaching a resolution; however, the Parties were unable to reach an agreement that day.

**WHEREAS**, in the days following the mediation, the Parties maintained an open dialogue and continued to negotiate. The Parties ultimately reached an agreement in principle on April 16, 2024, when both sides accepted a mediator's proposal made by Mr. Behm.

**WHEREAS**, pursuant to the terms set forth below, this Agreement resolves all actual and potential claims, actions, and proceedings as set forth in the release contained herein, by and on behalf of members of the Settlement Class defined herein, but excludes the claims of any Class Members who opt out from the Settlement Class pursuant to the terms and conditions herein.

**WHEREAS**, Plaintiffs and Proposed Settlement Class Counsel ("Class Counsel") have thoroughly examined the law and facts relating to the matters at issue in the Action, to Plaintiffs' claims, and to LCC's potential defenses. Based on a thorough analysis of the facts and the law applicable to Plaintiffs' claims in the Action, and taking into account the burden, expense, and delay of continued litigation, including the risks and uncertainties associated with litigating class certification and other defenses LCC may assert, a protracted trial and appeal(s), as well as the opportunity for a fair, cost-effective, and assured method of resolving the claims of the Settlement Class, Plaintiffs and Class Counsel believe that resolution is an appropriate and reasonable means of ensuring that the Settlement Class is afforded important benefits expediently. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and the risk of continued litigation, as well as the difficulties and delays inherent in such litigation, as well as LCC's limited available insurance coverage.

**WHEREAS**, Plaintiffs and Class Counsel believe that the terms set forth in this Settlement Agreement confer substantial benefits upon the Settlement Class and have determined that they are fair, reasonable, adequate, and in the best interests of the Settlement Class.

**WHEREAS**, LCC has similarly concluded that this Agreement is desirable in order to avoid the time, risk, and expense of defending protracted litigation, and to resolve finally and completely the claims of Plaintiffs and the Settlement Class.

**WHEREAS**, this Agreement, whether or not consummated, and any actions or proceedings taken pursuant to this Agreement, are for settlement purposes only, and Plaintiffs acknowledge that LCC specifically denies any and all wrongdoing, and has concluded this matter strictly to avoid protracted litigation. The existence of, terms in, and any action taken under or in connection with this Agreement shall not constitute, be construed as, or be admissible in evidence as, any admission by LCC of (i) the validity of any claim, defense, or fact asserted in the Action or any other pending or future action, or (ii) any wrongdoing, fault, violation of law, or liability of any kind on the part of the Parties.

**WHEREAS**, the foregoing Recitals are true and correct and are hereby fully incorporated in, and made a part of, this Agreement.

**NOW, THEREFORE**, in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree, as follows:

1. **DEFINITIONS**

As used in this Agreement, the following terms shall be defined as follows:

1.1    "Action" means the case captioned *In Re Lansing Community College Data Breach Litigation*, Case No. 1:23-cv-00738-PLM pending in the United States District Court for the Western District of Michigan before the Honorable Paul L. Maloney, along with all other cases consolidated therewith.

1.2    "Administrative Expenses" means all charges and expenses incurred by the Settlement Administrator as agreed upon by both Parties or by order of the Court in the administration of this Settlement, including, without limitation, all expenses and costs associated with claims administration, the Notice Plan and providing Notice to the Settlement Class. Administrative Expenses also include all reasonable third-party fees and expenses incurred by the Settlement Administrator in administering the terms of this Agreement.

1.3    "Agreement" or "Settlement Agreement" means this Class Action Settlement Agreement and Release. The terms of the Settlement Agreement are set forth herein including the exhibits hereto.

1.4    "Approved Claim(s)" means a claim as evidenced by a Claim Form submitted by a Class Member that (a) is timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Settlement Administrator.

1.5    "Business Days" mean Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the federal government.

1.6    "CAFA Notice" means the notice of the proposed Settlement sent by or on behalf of LCC to the appropriate Federal and State officials, pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, no later than ten (10) days after filing for approval of this proposed Settlement Agreement with the Court.

1.7    "Claimant" means a Class Member who submits a Claim Form for a Settlement Payment.

1.8    "Claim Form" means the form attached hereto as **Exhibit A**, as approved by the Court. The Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Class Members who wish to file a claim for their given share of the Settlement Benefits pursuant to the terms and

conditions of this Agreement. The Claim Form shall be available for download from the Settlement Website. The Settlement Administrator shall mail a Claim Form, in hardcopy form, to any Class Member who so requests.

1.9     "Claims Deadline" means the date by which all Claim Forms must be received to be considered timely and shall be set as the date ninety (90) days after the Notice Date. The Claims Deadline shall be clearly set forth in the Long Form Notice, the Summary Notice, the Claim Form, and the Court's order granting Preliminary Approval.

1.10    "Class Counsel" means Benjamin F. Johns of Shub & Johns LLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC, as Proposed Settlement Class Counsel (collectively "Class Counsel" or "Settlement Class Counsel").

1.11    "Class Member" means a member of the Settlement Class.

1.12    "Class Representatives" and "Plaintiffs" means Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette.

1.13    "Court" means the United States District Court for the Western District of Michigan.

1.14    "Data Security Incident" refers to the unauthorized access that is the subject of the Action and that was detected on LCC's computer network on or about March 14, 2023.

1.15    "Documented Loss" refers to monetary losses incurred by a Class Member and supported by Reasonable Documentation for attempting to remedy or remedying issues that are more likely than not a result of Data Security Incident, as further described below. Documented Loss must be supported by Reasonable Documentation that a Class Member actually incurred unreimbursed losses and consequential expenses that are more likely than not related to the Data Security Incident and incurred on or after December 25, 2022.

1.16    "Effective Date" means the date upon which the Settlement contemplated by this Agreement shall become effective as set forth in Section 10.1 below.

1.17    "Entity" means any person, corporation, partnership, limited liability company, association, trust, agency, or other organization of any type.

1.18    "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of reasonable litigation costs and expenses awarded by the Court to Class Counsel, to be paid from the Settlement Fund.

1.19    "Final Approval Order" means the order to be entered by the Court after the Final Approval Hearing, which approves the Settlement Agreement. The Final Approval Order must be substantially similar to the form attached hereto as **Exhibit B**.

1.20    "Final Approval Hearing" means the hearing to be conducted by the Court to determine the fairness, adequacy, and reasonableness of the Settlement pursuant to the Federal Rules of Civil Procedure and whether to issue the Final Approval Order and Judgment.

1.21    "LCC's Counsel" or references to counsel for LCC means attorneys Scott L. Mandel, Alexander S. Rusek, Taylor A. Gast, Amanda Dernovshek, Destiny Sykes, and all other attorneys of the law firm Foster, Swift, Collins & Smith, P.C. and Scott Dwyer and Jennifer Puplava and all other attorneys of the law firm Mika Myers PLC.

1.22    "LCC" or "Defendant" means Defendant Lansing Community College and its predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and any and all of its past, present, and future trustees, officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing.

1.23    "Escrow Account" means an interest-bearing bank escrow account established and administered by the Settlement Administrator.

1.24    "Long Form Notice" means the long form notice of settlement substantially in the form attached hereto as **Exhibit C**.

1.25    "Net Settlement Fund" means the amount of funds that remain in the Settlement Fund after funds are paid from or allocated for payment from the Settlement Fund for the following: (i) reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, (ii) Service Awards approved by the Court, (iii) any amounts approved by the Court for the Fee Award and Costs, and (iv) Taxes, if any.

1.26    "Notice" means notice of the proposed class action settlement to be provided to Class Members pursuant to the Notice Plan approved by the Court in connection with preliminary approval of the Settlement. The Notice shall consist of the Summary Notice, the Long Form Notice, and the Settlement Website and toll-free telephone line.

1.27    "Notice Date" means the date upon which Settlement Class Notice is initially disseminated to the Settlement Class by the Settlement Administrator, which shall be no later than thirty (30) days after the Court enters the Preliminary Approval Order.

1.28    "Notice Plan" means the settlement notice program, as approved by the Court, developed by the Settlement Administrator and described in this Agreement for disseminating Notice to the Class Members of the terms of this Agreement and the Final Approval Hearing.

1.29    "Objection Deadline" means the date by which Class Members must file and postmark required copies of any written objections, pursuant to the terms and conditions herein, to this Settlement Agreement and to any application and motion

for (i) the Fee Award and Costs, and (ii) the Service Awards, which shall be sixty (60) days following the Notice Date. The Objection Deadline shall be sixty (60) days after the Notice Date. This deadline for filing an objection will be clearly set forth in the Settlement Class Notice.

1.30    "Opt-Out Period" means the period in which a Class Member may submit a Request for Exclusion, pursuant to the terms and conditions herein, which shall expire sixty (60) days following the Notice Date. The deadline for filing a Request for Exclusion will be clearly set forth in the Settlement Class Notice.

1.31    "Parties" means the Plaintiffs and Defendant LCC.

1.32    "Personal Information" means the personally identifiable information contained in the accessed network included names and Social Security numbers relating to LCC employees, students, potential students, vendors, and others.

1.33    "Preliminary Approval Order" means an order by the Court that preliminarily approves the Settlement (including, but not limited to, the forms and procedure for providing Notice to the Settlement Class), permits Notice to the proposed Settlement Class, establishes a procedure for Class Members to object to or opt out of the Settlement, and sets a date for the Final Approval Hearing, without material change to the Parties' agreed-upon proposed preliminary approval order attached hereto as **Exhibit D**.

1.34    "Qualified Settlement Fund" means an account established by the Settlement Administrator that meets the requirements of 26 C.F.R. § 1.468B-1(c).

1.35    "Reasonable Documentation" means documentation supporting a claim for Documented Loss including, but not limited to, credit card statements, bank statements, invoices, police reports, telephone records, and receipts.

1.36    "Released Claims" means any claim, liability, right, demand, suit, obligation, damage, including consequential damage, loss or cost, punitive damage, attorneys' fees, costs, and expenses, action or cause of action, of every kind or description—whether known or Unknown (as the term "Unknown Claims" is defined herein), suspected or unsuspected, asserted or unasserted, liquidated or unliquidated, legal, statutory, or equitable—that was or could have been asserted against a Released Party on behalf of the Settlement Class related to or arising from the Data Security Incident regardless of whether the claims or causes of action are based on federal, state, or local law, statute, ordinance, regulation, contract, common law, or any other source, and regardless of whether they are foreseen or unforeseen, suspected or unsuspected, fixed or contingent, or arising out of or related or connected in any way with the claims or causes of action of every kind and description that were brought, alleged, argued, raised or asserted in any pleading or court filing in the Action.

1.37    "Released Parties" means LCC and its respective predecessors, successors, assigns, parents, subsidiaries, divisions, departments, and any and all of its past, present,

and future trustees, officers, directors, employees, equity holders, stockholders, partners, servants, agents, successors, attorneys, representatives, insurers, reinsurers, subrogees and assigns of any of the foregoing, including LCC's Counsel. Each of the Released Parties may be referred to individually as a "Released Party."

1.38    "Service Awards" means the amount awarded by the Court and paid to the Class Representatives in recognition of their role in this litigation, as set forth below.

1.39    "Settlement" means this settlement of the Action by and between the Parties, and the terms thereof as stated in this Settlement Agreement.

1.40    "Settlement Administrator" means Kroll Settlement Administration, LLC, the third-party class action settlement administrator selected by the Parties subject to the approval of the Court. Under the supervision of Class Counsel, the Settlement Administrator shall oversee and implement the Notice Plan and receive any requests for exclusion from the Class. Class Counsel and LCC may, by agreement, substitute a different Settlement Administrator, subject to Court approval.

1.41    "Settlement Benefit(s)" means any Settlement Payment, the Documented Loss Payments, the Cash Fund Payments, the Prospective Relief set forth in Sections 2 and 3 herein, and any other benefits Class Members receive pursuant to this Agreement, including non-monetary benefits and relief, the Fee Award and Costs, and Administrative Expenses.

1.42    "Settlement Class" and "Class" means all natural persons whose Personal Information was compromised in the Data Security Incident. The Class is estimated to contain 757,832 people. Excluded from the Settlement Class are: (1) the judges presiding over the Action and members of their immediate families and their staff; (2) LCC, its subsidiaries, parent companies, successors, predecessors, and any entity in which LCC or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

1.43    "Settlement Fund" means the sum of $1,450,000.00 to be paid by on behalf of LCC, as specified in Section 3.1 of this Agreement.

1.44    "Settlement Payment" means any payment to be made to any Class Member on Approved Claims pursuant to Section 3.2 or Section 3.9 herein.

1.45    "Settlement Website" means the Internet website to be created, launched, and maintained by the Settlement Administrator, and which allows for the electronic submission of Claim Forms, and provides access to relevant case documents including the Settlement Class Notice, information about the submission of Claim Forms, and other relevant documents, including downloadable Claim Forms.

1.46    "Short Form Notice" or "Summary Notice" means the summary notice of the proposed Settlement herein, substantially in the form attached hereto as **Exhibit E**.

1.47    "Taxes" means all federal, state, or local taxes of any kind on any income earned by the Settlement Fund and the expenses and costs incurred in connection with the taxation of the Settlement Fund (including, without limitation, interest, penalties and the reasonable expenses of tax attorneys and accountants). All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Released Parties or their counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of this Agreement (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this Agreement ("Tax Expenses"), shall be paid out of the Settlement Fund. Further, Taxes and Tax Expenses shall be treated as, and considered to be, an Administration Expense and shall be timely paid by the Settlement Administrator, out of the Settlement Fund, without prior order from the Court and the Settlement Administrator shall be authorized (notwithstanding anything herein to the contrary) to withhold from distribution to Class Members with Approved Claims any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treasury Regulation § 1.468B-2(l)(2)). The Parties hereto agree to cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Agreement. For the purpose of Section 468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the Settlement Administrator shall be the "administrator." The Settlement Administrator shall timely and properly file or cause to be filed all informational and other tax returns necessary or advisable with respect to the Settlement Fund and the escrow account (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in this Agreement) shall be consistent with this Section and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in this Agreement.

1.48    "Unknown Claims" means any and all Released Claims that LCC or any Class Representative or Class Member does not know or suspect to exist in his, her, or its favor as of the Effective Date including but not limited to any which, if known by him, her, or it, might have materially affected his, her, or its decision(s) with respect to the Settlement. Class Representatives and Class Counsel acknowledge, and each Class Member by operation of law shall be deemed to have acknowledged, that the inclusion of "Unknown Claims" in the definition of Released Claims was separately bargained for and was a key element of the Settlement Agreement.

## 2.    DATA SECURITY CHANGES

LCC had extensive policies and procedures in place to safeguard personal information, including those related to information security, identity theft protection, records management, and an information security incident response plan prior to the Data Security Incident. LCC further represents that it has also maintained various data privacy security controls, such as:

- Administrative controls (policies, procedures, guidelines for the business and personnel), such as LCC's Information Security Policy, risk assessments, and compliance management;

- Technical controls (hardware and software mechanisms used to protect assets), such as firewalls, vulnerability management, and data loss prevention; and

- Physical controls (tangible means of preventing or detecting unauthorized access to facilities, systems, or assets), such as building access restrictions, cameras, and identification badges.

In regard to the Data Security Incident, when LCC's security team discovered the intrusion into LCC's network they took immediate action to remove the threat and secure LCC's network. Thereafter, LCC engaged numerous professionals to assist in its investigation and eventual notification efforts. Based on the investigation into the Data Security Incident, LCC completed a review and revision of the above set forth policies and procedures and took numerous additional steps to address the Data Security Incident, such as:

- Expanding use of Multi-Factor Authentication ("MFA")[1];

- Discontinuing the use of the vulnerable application attacked by the unauthorized actor;

- Updating software ("patching") and systems;

- Rebuilding compromised systems;

- Resetting passwords of compromised accounts;

- Implementing new and additional Endpoint Detection and Response ("EDR")[2] software; and

---

[1] MFA is an authentication method that requires the user to provide two or more verification factors to gain access to a resource, such as an application, online account, or a virtual private network. Rather than just asking for a username and password, MFA requires one or more additional verification factors, such as approval on a known phone or other device, which decreases the likelihood of a successful cyber-attacks.

[2] EDR is a cybersecurity technology that continuously monitors devices to detect and respond to cyber threats like ransomware and malware. EDR gathers and analyzes information related to

- Reducing the number of inactive and legacy user accounts.

Consistent with its policies, LCC will continue to comply with all current and future laws and regulations regarding data security as appropriate.

The information set forth in this section shall not be interpreted as establishing any form of obligation as to LCC to create or maintain any specific cybersecurity or information technology system or practice. Further, the information set forth in this section shall not form the basis for any action alleging noncompliance with this section or Agreement.

## 3.    SETTLEMENT FUND / MONETARY PAYMENT / BENEFITS DETAILS

3.1 LCC agrees to make or cause to be made the Settlement Payment to create the Settlement Fund as follows: within thirty-five (35) days after the latest of (a) entry of the Preliminary Approval Order, and (b) receipt from the Settlement Administrator of detailed wire instructions and a completed W-9 form. LCC agrees to and shall cause the $1,450,000.00 Settlement Fund amount to be deposited in an interest-bearing bank escrow account established and administered by the Settlement Administrator (the "Escrow Account"). The Escrow Account shall be held in a "Qualified Settlement Fund" in interest-bearing bank account deposits with commercial banks with excess capital exceeding One Billion United States Dollars and Zero Cents ($1,000,000,000.00), with a rating of "A" or higher by S&P and in an account that is fully insured by the United States Government or the FDIC.

The Parties agree and acknowledge that the Settlement Payment represents LCC's maximum financial obligation under this Settlement Agreement. The Parties further agree and acknowledge that LCC does not have any further monetary obligation whatsoever, including, but not limited to, any monetary obligations with respect to the Settlement Class, Class, Class Member, Class Representatives, Claim Administrator, Settlement Administrator, Class Counsel, Settlement Class Counsel, and Action

The Settlement Fund will be used to pay Approved Claims, Administrative Expenses (to be agreed upon by both parties), the Fee Award and Costs, and Service Awards.

    (a)    All interest on the funds in the Escrow Account shall accrue to the benefit of the Settlement Class. Any interest shall not be subject to withholding and shall, if required, be reported appropriately to the Internal Revenue Service by the Settlement Administrator. The Administrator is responsible for the payment of all Taxes.

    (b)    The funds in the Escrow Account shall be deemed a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1 at all times after the creation of the Escrow Account. All Taxes shall be paid out of the Escrow Account. Defendant, Defendant's Counsel, Plaintiffs, and Class

---

security threats on computer workstations and other endpoints, making it possible to identify security breaches as they happen and facilitate a quick response. EDR is also known as endpoint detection and threat response ("EDTR").

Counsel shall have no liability or responsibility for any of the Taxes. The Escrow Account shall indemnify and hold Defendant, Defendant's Counsel, Plaintiffs, and Class Counsel harmless for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification). For the purpose of the Internal Revenue Code and the Treasury regulations thereunder, the Settlement Administrator shall be designated as the "administrator" of the Settlement Fund. The Settlement Administrator shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)). Such returns (as well as the election described in the previous Section) shall be consistent with this Section and in all events shall reflect that all taxes (including the Taxes, any estimated Taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

(c)     The Settlement Administrator shall maintain control over the Settlement Fund and shall be responsible for all disbursements. The Settlement Administrator shall not disburse any portion of the Settlement Fund except as provided in this Agreement and with the written agreement of Class Counsel and Defendant's Counsel or by order of the Court. All funds held by the Settlement Administrator shall be deemed and considered to be *in custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Agreement or further order of the Court.

3.2     <u>Allocation of Net Settlement Fund</u>: The Settlement Fund, net of costs for notice, applicable Taxes, and administration, Plaintiffs' Attorneys' Fee and Expense Award, and class representative Service Awards (the "Net Settlement Fund"), will be allocated among class members pursuant to a plan of allocation set forth below in Section 3.7. Class Members may select one of the two options in Sections 3.2(a) and (b) below.

(a)     <u>Reimbursement for Actual Out-of-Pocket Losses and Attested Time</u> ("Documented Loss Payments"). Class Members may submit a claim for actual out of pocket losses that are more likely than not related to the Data Security Incident and time spent dealing with it (in accordance with the schedule below), cumulatively up to $2,000.00 per individual, and $150,000 in the aggregate. If the aggregate amount of valid claims for Documented Loss Payments exceeds $150,000 then the payments for those claims will be reduced and paid proportionally to one another out of the $150,000 cap for these claims. Class Members must provide documentation for the following losses (aside from reasonable lost time, which shall not be subject to a documentary proof requirement), and affirm under penalty of perjury their belief that the claimed losses are due to the Data Incident:

i.   Long distance telephone charges.

11

ii.  Cell phone minutes (if charged by the minute).

iii.  Internet usage charges (if either charged by the minute or incurred solely as a result of the Data Security Incident).

iv.  Costs of credit reports purchased between March 2, 2023 and the Claims Deadline.

v.  Documented costs paid for credit monitoring services and/or fraud resolution services purchased between March 2, 2023 and the Claims Deadline.

vi.  Documented expenses directly associated with dealing with identity theft or identity fraud related to the Data Security Incident.

vii.  Other documented losses incurred by Class Members that are more likely than not related to the Data Security Incident as reasonably determined by the Settlement Administrator.

(b)  Alternative Cash Payment. In lieu of making a monetary claim under Section 3.2(a) above, Settlement Class Members may submit a claim to receive a flat-fee Alternative Cash Payment. The amount of the Alternative Cash Payment will be determined in accordance with the Plan of Allocation in Section 3.7 after amounts sufficient to pay reasonable Administrative Expenses incurred pursuant to this Settlement Agreement, Service Awards approved by the Court, any amounts approved by the Court for the Fee Award and Costs, Taxes, and Approved Claims for benefits in Sections 3.2(a) (up to the $150,000 cap on for Documented Loss Payments) have been deducted from the Settlement Fund. Class Members only need to fill out and return a claim form to receive an Alternative Cash Payment; no additional documentation is required.

3.3  Settlement Payment Methods. Class Members will be provided the option to receive any Settlement Payment due to them pursuant to the terms of this Agreement via various digital methods. In the event that Class Members do not exercise this option with the Settlement Administrator, they will receive their Settlement Payment via a physical check sent to them by U.S. Mail.

3.4  Deadline to File Claims. Claim Forms must be postmarked if mailed, or received electronically if submitted electronically, within ninety (90) days after the Notice Date.

3.5  The Settlement Administrator. The Settlement Administrator shall have the authority to determine whether a Claim Form is valid, timely, and complete. To the extent the Settlement Administrator determines a claim is deficient for a reason other than late posting, within a reasonable amount of time, the Settlement Administrator shall notify the Claimant (with a copy to Class Counsel) of the deficiencies and notify the Claimant that he or she shall have thirty (30) days to

cure the deficiencies and re-submit the claim. No notification is required for late-posted claims. The Settlement Administrator shall exercise reasonable discretion to determine whether the Claimant has cured the deficient claim. If the Claimant fails to cure the deficiency, the claim shall stand as denied, and the Class Member shall be so notified if practicable.

3.6    <u>Timing of Settlement Benefits.</u> Within thirty (30) days after: (i) the Effective Date; or (ii) all Claim Forms have been processed subject to the terms and conditions of this Agreement, whichever date is later, the Settlement Administrator shall cause funds to be distributed to each Class Member with an Approved Claim.

3.7    <u>Plan of Allocation</u>. The Settlement Fund shall be used to make payments in the following order: (i) all Administrative Expenses, (ii) Fee Award and Costs and Plaintiff Service Awards, as approved by the Court, (iii) payment for valid claims for Documented Loss Payments pursuant to Section 3.2(a), up to the $150,000 cap; (vi) approved Alternative Cash Benefit payments pursuant to Section 3.2(b), on a *pro rata* basis to exhaust the balance of the Net Settlement Fund. Each Class Member may submit only one claim for himself or herself but may submit additional claims for other Class Members who are under the age of eighteen (18) at the time of the claim submission, and for whom they are a parent or legal guardian.

3.8    <u>Deadline to Deposit or Cash Physical Checks</u>. Class Members with Approved Claims who receive a Documented Loss Payment or an Alternative Cash Fund Payment, by physical check, shall have one hundred twenty (120) days following distribution to deposit or cash their physical check.

3.9    <u>Distribution of Remainder Funds</u>. To the extent any monies remain in the Net Settlement Fund more than one hundred twenty (120) days after the distribution of all Settlement Payments to the Class Members, a subsequent Settlement Payment will be evenly made to all Class Members with Approved Claims for monetary payments under either Sections 3.2(b)or 3.2(c) above and who cashed or deposited the initial payment they received, provided that the average check amount is equal to or greater than Three Dollars and No Cents ($3.00). The distribution of this remaining Net Settlement Fund shall continue until the average check or digital payment amount in a distribution is less than three dollars ($3.00), whereupon the amount remaining in the Net Settlement Fund, if any, shall be distributed by mutual agreement of the Parties to a Court-approved non-profit recipient. Should it become necessary to distribute any remaining amount of the Net Settlement Fund to a Court-approved non-profit recipient, the Parties shall petition the Court for permission to do so, providing the Court with details of the proposed non-profit recipient.

3.10    <u>Returned Payments</u>. For any Settlement Payment returned to the Settlement Administrator as undeliverable (including, but not limited to, when the intended recipient is no longer located at the address), the Settlement Administrator shall make one additional effort to make any digital payments and engage in reasonable

efforts to find a valid address (in the case of physical checks) and resend the Settlement Payment within thirty (30) days after the physical check is returned to the Settlement Administrator as undeliverable. The Settlement Administrator shall only make one attempt to repay or resend a Settlement Payment.

3.11    <u>Residue of Settlement Fund</u>. No portion of the Settlement Fund shall ever revert or be repaid to LCC after the Effective Date.

3.12    <u>Custody of Settlement Fund</u>. The Settlement Fund shall be deposited into the Escrow Account but shall remain subject to the jurisdiction of the Court until such time as the entirety of the Settlement Fund is distributed pursuant to this Settlement Agreement or returned to Defendant in the event this Settlement Agreement is voided, terminated, or cancelled. In the event this Settlement Agreement is voided, terminated, or cancelled due to lack of final approval from the Court or any other reason, any amounts remaining in the Settlement Fund after payment of all Administrative Expenses incurred in accordance with the terms and conditions of this Agreement, including all interest earned on the Settlement Fund net of any Taxes, shall be returned to Defendant LCC, and no other person or entity shall have any further claim whatsoever to such amounts.

3.13    <u>Non-Reversionary</u>. This is a non-reversionary settlement. As of the Effective Date, all rights of LCC in or to the Settlement Fund shall be extinguished, except in the event this Settlement Agreement is voided, cancelled, or terminated, as set forth herein. In the event the Effective Date occurs, no portion of the Settlement Fund shall be returned to LCC.

3.14    <u>Payment / Withdrawal Authorization</u>. No amounts from the Settlement Fund may be withdrawn unless (i) expressly authorized by the Court's order granting approval to the Settlement Agreement or (ii) approved by the Court. The Parties, by agreement, may authorize the periodic payment of actual reasonable Administrative Expenses from the Settlement Fund as such expenses are invoiced without further order of the Court. The Settlement Administrator shall provide Class Counsel and LCC's Counsel with notice of any withdrawal or other payment the Settlement Administrator proposes to make from the Settlement Fund before the Effective Date at least seven (7) Business Days prior to making such withdrawal or payment.

3.15    <u>Payments to Class Members</u>. The Settlement Administrator, subject to such supervision and direction of the Court and/or Class Counsel as may be necessary or as circumstances may require, shall administer and/or oversee distribution of the Settlement Fund to Class Members pursuant to this Agreement.

3.16    <u>Taxes</u>. All Taxes relating to the Settlement Fund shall be paid out of the Settlement Fund, shall be considered an Administrative Expense, and shall be timely paid by the Settlement Administrator without prior order of the Court. Further, the Settlement Fund shall indemnify and hold harmless the Parties and their counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments). The Parties and their respective counsel have made no

representation or warranty with respect to the tax treatment by any Class Representative or any Class Member of any payment or transfer made pursuant to this Agreement or derived from or made pursuant to the Settlement Fund. Taxes do not include any federal, state, or local tax owed by any Claimant, Class Representative, or Class Member as a result of any benefit or payment received as a result of the Settlement. Each Claimant, Class Representative, and Class Member shall be solely responsible for the federal, state, and local tax consequences to him, her, or it of the receipt of funds from the Settlement Fund pursuant to this Agreement.

3.17    <u>Limitation of Liability</u>.

(a)    LCC and LCC's Counsel shall not have any responsibility for or liability whatsoever with respect to (i) any act, omission or determination of Class Counsel, the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(b)    Class Representatives and Class Counsel shall not have any liability whatsoever with respect to (i) any act, omission, or determination of the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by or fluctuations in the value of the Settlement Fund; or (vi) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

(c)    The Settlement Administrator shall indemnify and hold Class Counsel, the Settlement Class, Class Representatives, LCC, and LCC's Counsel harmless for (i) any act or omission or determination of the Settlement Administrator, or any of Settlement Administrator's designees or agents, in connection with the Notice Plan and the administration of the Settlement; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the formulation, design, or terms of the disbursement of the Settlement Fund; (iv) the determination, administration, calculation, or payment of any claims asserted against the Settlement Fund; (v) any losses suffered by, or fluctuations in the value of the Settlement Fund; or (vi) the payment or

15

withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Settlement Fund or the filing of any returns.

4. **RELEASE**

4.1    Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Security Incident or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement, or to any Class Member (or the estate of any Class Member) who has been confirmed to be deceased.

4.2    The Parties understand that if the facts upon which this Agreement is based are found hereafter to be different from the facts now believed to be true, each Party expressly assumes that risk of such possible difference in facts and agrees that this Agreement shall remain effective notwithstanding such difference in facts. The Parties agree that in entering this Agreement, it is understood and agreed that each Party relies wholly upon its own judgment, belief, and knowledge and that each Party does not rely on inducements, promises, or representations made by anyone other than those embodied herein.

5. **REQUIRED EVENTS AND COOPERATION BY PARTIES**

5.1    <u>Preliminary Approval</u>. Class Counsel shall submit this Agreement to the Court and shall promptly move the Court to enter the Preliminary Approval Order, in the form attached as **Exhibit D**.

5.2    <u>CAFA Notice</u>. Within ten (10) days after Class Counsel files the motion for preliminary approval of the Settlement, the Settlement Administrator (acting on behalf of Defendant) shall send the CAFA Notice to the appropriate Federal and State officials, pursuant to the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715. The Settlement Administrator shall prepare the CAFA Notice, which will include as exhibits the preliminary approval motion with all exhibits, the Agreement with all exhibits, all complaints filed, notices of any scheduled hearings; class notices, judgments; and all other information required by 28 U.S.C. § 1715(b) that is known at the time of mailing. Defendant shall provide the Settlement Administrator with all information necessary to prepare CAFA notice not later than three (3) days after the filing of the motion for preliminary

16

approval. Costs of such notice shall be paid from the Settlement Fund. When the Settlement Administrator provides the CAFA Notice in accordance with this section of the Settlement Agreement, it shall provide copies of the CAFA Notice to Class Counsel and Defendant's Counsel.

5.3    <u>Cooperation</u>. The Parties shall, in good faith, cooperate, assist, and undertake all reasonable actions and steps in order to accomplish all requirements of this Agreement on the schedule set by the Court, subject to the terms of this Agreement. If, for any reason, the Parties determine that the schedule set by the Court is no longer feasible, the Parties shall use their best judgment to amend the schedule to accomplish the goals of this Agreement.

5.4    <u>Certification of the Settlement Class</u>. For purposes of this Settlement only, the Parties stipulate to the certification of the Settlement Class, which is contingent upon the Court entering the Final Approval Order and Judgment of this Settlement and the occurrence of the Effective Date. Should: (1) the Settlement not receive final approval from the Court, or (2) the Effective Date not occur, the certification of the Settlement Class shall be void. LCC reserves the right to contest class certification for any and all other purposes. The Parties Plaintiffs and LCC further stipulate to designate the Class Representatives as the representatives for the Settlement Class.

5.5    <u>Final Approval</u>. The Parties shall request that the Court schedule the Final Approval Hearing for a date that is no earlier than one hundred twenty (120) days after the entry of the Preliminary Approval Order.

## 6.    CLASS NOTICE, OPT-OUTS, AND OBJECTIONS

6.1    Notice shall be disseminated pursuant to the Court's Preliminary Approval Order.

6.2    The Settlement Administrator shall oversee and implement the Notice Plan approved by the Court. All costs associated with the Notice Plan shall be paid from the Settlement Fund.

6.3    <u>Direct Notice</u>. No later than the Notice Date, or such other time as may be ordered by the Court, the Settlement Administrator shall disseminate Notice to the Class Members via direct mail.

6.4    <u>Settlement Class List</u>. Within fourteen (14) days after the issuance of the Preliminary Approval Order, LCC will provide to the Settlement Administrator a list of the names and any contact information of the Class Members that it has in its possession, custody, or control. The Settlement Class List will, at a minimum, contain the name and contact information of everyone who received an initial notice concerning the Data Security Incident. Every person on the Settlement Class List will be provided with a unique identifier by the Settlement Administrator that they will be asked for when they submit claims. Anyone who believes they are a Settlement Class Member but are not on the Settlement Class List may contact the

Settlement Administrator and, upon providing reasonable proof, will be provided with a unique identifier and allowed to participate in the Settlement.

6.5    <u>Confidentiality</u>. Any information relating to Class Members provided to the Settlement Administrator pursuant to this Agreement shall be provided solely for the purpose of providing Notice to the Class Members (as set forth herein) and allowing them to recover under this Agreement; shall be kept in strict confidence by the Parties, their counsel, and the Settlement Administrator; shall not be disclosed to any third party; shall be destroyed after all distributions to Class Members have been made; and shall not be used for any other purpose. Moreover, because the Class Member list and information contained therein will be provided to the Settlement Administrator solely for purposes of providing the Class Notice and Settlement Benefits and processing opt-out requests, the Settlement Administrator will execute a confidentiality and non-disclosure agreement with Class Counsel and LCC's Counsel, and will ensure that any information provided to it by Class Members, Class Counsel, LCC, or LCC's Counsel, will be secure and used solely for the purpose of effecting this Settlement.

6.6    <u>Fraud Prevention</u>. The Settlement Administrator shall use reasonable and customary fraud-prevention mechanisms to prevent (i) submission of Claim Forms by persons other than potential Class Members, (ii) submission of more than one Claim Form per person, and (iii) submission of Claim Forms seeking amounts to which the Claimant is not entitled. In the event a Claim Form is submitted without a unique Class Member identifier, the Settlement Administrator shall employ reasonable efforts to ensure that the Claim is valid.

6.7    <u>Settlement Website</u>. Prior to any dissemination of the Summary Notice and prior to the Notice Date, the Settlement Administrator shall cause the Settlement Website to be launched on the Internet in accordance with this Agreement. The Settlement Administrator shall create the Settlement Website. The Settlement Website shall contain information regarding how to submit Claim Forms (including submitting Claims Forms electronically through the Settlement Website) and relevant documents, including, but not limited to, the Long Form Notice, the Claim Form, this Agreement, the Preliminary Approval Order entered by the Court, and the operative Consolidated Class Action Complaint in the Action, and will (on its URL landing page) notify the Settlement Class of the date, time, and place of the Final Approval Hearing. The Settlement Website shall also provide the toll-free telephone number and mailing address through which Class Members may contact the Settlement Administrator directly.

6.8    <u>Opt-Out/Request for Exclusion</u>. The Notice shall explain that the procedure for Class Members to opt out and exclude themselves from the Settlement Class is by notifying the Settlement Administrator in writing, postmarked no later than sixty (60) days after the Notice Date. Any Class Member may submit a Request for Exclusion from the Settlement at any time during the Opt-Out Period. To be valid, the Request for Exclusion must be postmarked or received by the Settlement Administrator on or before the end of the Opt-Out Period. Any Request for

Exclusion must be in writing and must identify the case name "*In Re Lansing Community College Data Breach Litigation;*" state the name, address, telephone number and unique identifier of the Class Member seeking exclusion; be physically signed by the person(s) seeking exclusion; and must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in '*In Re Lansing Community College Data Breach Litigation*'" Any person who elects to request exclusion from the Settlement Class shall not (i) be bound by any orders or Judgment entered in the Action, (ii) be entitled to relief under this Agreement, (iii) gain any rights by virtue of this Agreement, or (iv) be entitled to object to any aspect of this Agreement. Requests for Exclusion may only be made on an individual basis, and no person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

6.9    <u>Objections</u>. The Notice shall also explain that the procedure for Class Members to object to the Settlement is by submitting written objections to the Court no later than sixty (60) days after the Notice Date (the "Objection Deadline"). Any Class Member may enter an appearance in the Action, at their own expense, individually or through counsel of their own choice. Any Class Member who wishes to object to the Settlement, the Settlement Benefits, Service Awards, and/or the Fee Award and Costs, or to appear at the Final Approval Hearing and show cause, if any, for why the Settlement should not be approved as fair, reasonable, and adequate to the Class, why a final judgment should not be entered thereon, why the Settlement Benefits should not be approved, or why the Service Awards and/or the Fee Award and Costs should not be granted, may do so, but must proceed as set forth in this Section. No Class Member or other person will be heard on such matters unless they have filed in this Action the objection, together with any briefs, papers, statements, or other materials the Class Member or other person wishes the Court to consider, within sixty (60) days following the Notice Date. All written objections and supporting papers must clearly (a) state the Class Member's full name, current mailing address, and telephone number; (b) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Security Incident); (c) identify the specific factual and legal grounds for the objection; (d) identify all counsel representing the Class Member in connection with the objection, if any; and (e) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing. All objections must be submitted to the Settlement Administrator, Class Counsel identified below, and to the Court either by mailing them to: United States Courthouse, 110 Michigan St NW, Grand Rapids, MI 49503 or by filing them in person at the Courthouse. All objections must be filed or postmarked on or before the Objection Deadline, as set forth above. Any Class Member who does not make their objections in the manner and by the date set forth in this Section shall be deemed to have waived any objections and shall be forever barred from raising such objections.

**7.    SETTLEMENT ADMINISTRATION**

7.1    <u>Submission of Claims</u>.

(a)     <u>Submission of Electronic and Hard Copy Claims</u>. Class Members may submit electronically verified Claim Forms to the Settlement Administrator through the Settlement Website or may download Claim Forms to be filled out, signed, and submitted physically by mail to the Settlement Administrator. Claim Forms must be submitted electronically or postmarked during the Claims Period and on or before the Claims Deadline. The Settlement Administrator shall reject any Claim Forms that are incomplete, inaccurate, or not timely received and will provide Claimants notice and the ability to cure defective claims, unless otherwise noted in this Agreement.

(b)     <u>Review of Claim Forms</u>. The Settlement Administrator will review Claim Forms submitted by Class Members to determine whether they are eligible for a Settlement Payment.

7.2     <u>Settlement Administrator's Duties</u>.

(a)     <u>Cost Effective Claims Processing</u>. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner, and calculate Settlement Payments in accordance with this Agreement.

(b)     <u>Dissemination of Notices</u>. The Settlement Administrator shall disseminate the Notice Plan as provided for in this Agreement.

(c)     <u>Maintenance of Records</u>. The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and LCC's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. Upon request, the Settlement Administrator shall provide Class Counsel and LCC's Counsel with information concerning Notice, administration, and implementation of the Settlement. Without limiting the foregoing, the Settlement Administrator also shall:

(i)     Receive Requests for Exclusion from Class Members and provide Class Counsel and LCC's Counsel a copy thereof no later than five (5) days following the deadline for submission of the same. If the Settlement Administrator receives any Requests for Exclusion or other requests from Class Members after expiration of the Opt-Out Period, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and LCC's Counsel;

(ii)    Provide weekly reports to Class Counsel and LCC's Counsel that include, without limitation, reports regarding the number of Claim Forms received, the number of Claim Forms approved by the Settlement Administrator, the amount of Claims Forms received (including a breakdown of what types of claims were received and approved), and the categorization and description of Claim Forms rejected by the Settlement Administrator. The Settlement Administrator shall also, as requested by Class Counsel or LCC's Counsel and from time to time, provide the amounts remaining in the Net Settlement Fund;

(iii)    Make available for inspection by Class Counsel and LCC's Counsel the Claim Forms and any supporting documentation received by the Settlement Administrator at any time upon reasonable notice;

(iv)    Cooperate with any audit by Class Counsel or LCC's Counsel, who shall have the right but not the obligation to review, audit, and evaluate all Claim Forms for accuracy, veracity, completeness, and compliance with the terms and conditions of this Agreement.

7.3    <u>Requests For Additional Information</u>: In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Class Member who submits a Claim Form.

## 8.   SERVICE AWARDS

8.1    Class Representatives and Class Counsel may seek Service Awards to the six Class Representatives of up to $1,500 for each. Class Counsel will file a motion seeking Court approval of the requested Service Awards at least seven days prior to the Objection filing deadline.

8.2    The Settlement Administrator shall pay any Service Awards approved by the Court to the Class Representatives from the Settlement Fund. Such Service Awards shall be paid by the Settlement Administrator, in the amount approved by the Court, within five (5) business days after the Effective Date.

8.3    In the event the Court declines to approve, in whole or in part, the payment of the Service Award in the amounts requested, the remaining provisions of this Agreement shall remain in full force and effect. No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the amount of the Service Award shall constitute grounds for cancellation or termination of this Agreement.

## 9.   ATTORNEYS' FEES, COSTS, AND EXPENSES

9.1    Class Counsel may file a motion seeking an award of attorneys' fees of up to 1/3 (one-third) of the Settlement Fund, and, additionally, reasonably incurred litigation

expenses and costs (not to exceed $50,000), at least seven days prior to the Objection filing deadline (the "Fee Award and Costs" motion). The Fee Award and Cost motion shall be posted on the Settlement Website promptly after it is filed, and before the deadline for filing objections or opt-outs.

9.2    The Settlement Administrator shall pay any attorneys' fees, costs, and expenses awarded by the Court to Class Counsel in the amount approved by the Court, from the Settlement Fund, within five (5) business days after the Effective Date.

9.3    Unless otherwise ordered by the Court, Class Counsel shall have the sole and absolute discretion to allocate any approved Fee Award and Costs amongst themselves and other Plaintiffs' firms that have filed a case and worked on this matter.

9.4    The Settlement is not conditioned upon the Court's approval of an award of Class Counsel's Fee Award and Costs or Service Awards.

9.4    LCC expressly reserves the right to challenge or object to Plaintiffs' requested Fee Award and Costs.

## 10.    EFFECTIVE DATE, MODIFICATION, AND TERMINATION

10.1    The Effective Date of the Settlement shall be the first business day after all of the following conditions have occurred:

(a)    LCC and Class Counsel execute this Agreement;

(b)    The Court enters the Preliminary Approval Order attached hereto as **Exhibit D**, without material change;

(c)    Notice is provided to the Settlement Class consistent with the Preliminary Approval Order;

(d)    The Court enters the Final Approval Order and Judgment attached hereto as **Exhibit B**, respectively, without material change; and

(e)    The Final Approval Order and Judgment have become "Final" because: (i) the time for appeal, petition, rehearing or other review has expired; or (ii) if any appeal, petition, request for rehearing or other review has been filed, the Final Approval Order and Judgment is affirmed without material change or the appeal is dismissed or otherwise disposed of, no other appeal, petition, rehearing or other review is pending, and the time for further appeals, petitions, requests for rehearing or other review has expired.

10.2    In the event that the Court declines to enter the Preliminary Approval Order, declines to enter the Final Approval Order and Judgment, or the Final Approval Order and Judgment does not become Final (as described in Section 10.1(e) of this Agreement), LCC may at its sole discretion terminate this Agreement on five (5)

22

Business Days written notice from LCC's Counsel to Class Counsel. If LCC elects to terminate this Agreement under any of those circumstances, the balance of the Settlement Fund (after payment of costs of notice and administration necessary for the preliminary and final approval process), plus any interest earned on the Settlement Fund, shall be returned to LCC within fourteen (14) days after LCC communicates that election to Plaintiffs.

10.3    Notwithstanding anything else herein, in the event the terms or conditions of this Settlement Agreement are materially modified by any court, any Party in its sole discretion to be exercised within fourteen (14) days after such modification may declare this Settlement Agreement null and void. In the event of a material modification by any court, and in the event the Parties do not exercise their unilateral options to withdraw from this Settlement Agreement pursuant to this Section, the Parties shall meet and confer within seven (7) days of such ruling to attempt to reach an agreement as to how best to effectuate the court-ordered modification. For the avoidance of doubt, a "material modification" shall not include any reduction by the Court of the Fee Award and Costs and/or Service Awards.

10.4    Except as otherwise provided herein, in the event the Settlement is terminated, the Parties to this Agreement, including Class Members, shall be deemed to have reverted to their respective status in the Action immediately prior to the execution of this Agreement, and, except as otherwise expressly provided, the Parties shall proceed in all respects as if this Agreement and any related orders had not been entered. In addition, the Parties agree that in the event the Settlement is terminated, any orders entered pursuant to the Agreement shall be deemed null and void and vacated and shall not be used in or cited by any person or entity in support of claims or defenses.

10.5    In the event this Agreement is terminated pursuant to any provision herein, then the Settlement proposed herein shall become null and void and shall have no legal effect, and the Parties will return to their respective positions existing immediately before the execution of this Agreement.

10.6    Notwithstanding any provision of this Agreement, in the event this Agreement is not approved by any Court, or terminated for any reason, or the Settlement set forth in this Agreement is declared null and void, or in the event that the Effective Date does not occur, Class Members, Plaintiffs, and Class Counsel shall not in any way be responsible or liable for any of the Administrative Expenses, or any expenses, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs.

## 11.    NO ADMISSION OF WRONGDOING OR LIABILITY

11.1    This Agreement, whether or not consummated, any communications and negotiations relating to this Agreement or the Settlement, and any proceedings taken pursuant to the Agreement:

(a)    shall not be offered or received against Defendant LCC as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by Defendant LCC with respect to the truth of any fact alleged by any Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of LCC;

(b)    shall not be offered or received against LCC as evidence of a presumption, concession or admission of any fault, misrepresentation or omission with respect to any statement or written document approved or made by LCC;

(c)    shall not be offered or received against LCC as evidence of a presumption, concession or admission with respect to any liability, negligence, fault, breach of duty, or wrongdoing, or in any way referred to for any other reason as against LCC, in any other civil, criminal, or administrative or governmental action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, the Parties may refer to it to effectuate the liability protection granted them hereunder;

(d)    shall not be construed against LCC as an admission or concession that the consideration to be given hereunder represents the relief that could be or would have been awarded after trial; and

(e)    shall not be construed as or received in evidence as an admission, concession or presumption against the Class Representatives or any Class Member that any of their claims are without merit, or that any defenses asserted by LCC have any merit.

## 12.    REPRESENTATIONS

12.1    Each Party represents that: (i) such Party has full legal right, power, and authority to enter into and perform this Agreement, subject to Court approval; (ii) the execution and delivery of this Agreement by such Party and the consummation by such Party of the transactions contemplated by this Agreement have been duly authorized by such Party; (iii) this Agreement constitutes a valid, binding, and enforceable agreement; and (iv) no consent or approval of any person or entity is necessary for such Party to enter into this Agreement.

## 13.    NOTICE

13.1    All notices to Class Counsel provided for in this Agreement shall be sent by email (to all email addresses set forth below) and by First-Class mail to all of the following:

**SHUB & JOHNS LLC**
Benjamin F. Johns
Four Tower Bridge
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
bjohns@shublawyers.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Gary M. Klinger
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
866-252-0878
gklinger@milberg.com

*Plaintiffs' Co-Lead Counsel*

13.2   All notices to LCC or LCC's Counsel provided for in this Agreement shall be sent by email and First-Class mail to the following:

J.R. Beauboeuf
Director of Risk Management & Legal Services
Lansing Community College411 N. Grand Avenue
Lansing, MI 48933
E: beauboej@lcc.edu

*and*

Alexander S. Rusek
Taylor A. Gast
Amanda Dernovshek
Destiny Sykes
**FOSTER, SWIFT, COLLINS & SMITH, P.C.**
313 S. Washington Square
Lansing, MI 48933
arusek@fosterswift.com
tgast@fosterswift.com
adernovshek@fosterswift.com
dsykes@fosterswift.com

*Counsel for Defendant LCC*

*and*

Jennifer Puplava
**MIKA MYERS PLC**

25

900 Monroe Avenue NW
Grand Rapids, MI 49503
E: JPuplava@mikameyers.com

*Counsel for Defendant LCC*

13.3   All notices to the Settlement Administrator provided for in this Agreement shall be sent by email and First-Class mail to the following address:

In re Lansing Community College Data Breach Litigation
c/o Kroll Settlement Administration
PO Box 225391
New York, NY 10150-5391

13.4   The notice recipients and addresses designated in this Section may be changed by written notice agreed to by the Parties and posted on the Settlement Website.

## 14.   MISCELLANEOUS PROVISIONS

14.1   <u>Representation by Counsel</u>. The Class Representatives and LCC represent and warrant that they have been represented by, and have consulted with, the counsel of their choice regarding the provisions, obligations, rights, risks, and legal effects of this Agreement and have been given the opportunity to review independently this Agreement with such legal counsel and agree to the particular language of the provisions herein.

14.2   <u>Best Efforts</u>. The Parties agree that they will make all reasonable efforts needed to reach the Effective Date and fulfill their obligations under this Agreement.

14.3   <u>Contractual Agreement</u>. The Parties understand and agree that all terms of this Agreement, including the Exhibits thereto, are contractual and are not a mere recital, and each signatory warrants that he, she, or it is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that they or it represents.

14.4   <u>Integration</u>. This Agreement constitutes the entire agreement among the Parties and no representations, warranties or inducements have been made to any Party concerning this Agreement other than the representations, warranties and covenants contained and memorialized herein.

14.5   <u>Drafting</u>. The Parties agree that no single Party shall be deemed to have drafted this Agreement, or any portion thereof. This Settlement Agreement is a collaborative effort of the Parties and their attorneys that was negotiated on an arm's-length basis between parties of equal bargaining power. Accordingly, this Agreement shall be neutral, and no ambiguity shall be construed in favor of or against any of the Parties. The Parties expressly waive any otherwise applicable presumption(s) that

uncertainties in a contract are interpreted against the party who caused the uncertainty to exist.

14.6    <u>Modification or Amendment</u>. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by the persons who executed this Agreement or their successors-in-interest.

14.7    <u>Waiver</u>. The failure of a Party hereto to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement. In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

14.8    <u>Severability</u>. Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable. In any event, except as provided in Section 10.4, such provision shall be separable and shall not limit or affect the validity, legality or enforceability of any other provision hereunder.

14.9    <u>Successors</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the heirs, successors and assigns of the Parties thereto.

14.10   <u>Survival</u>. The Parties agree that the terms set forth in this Agreement shall survive the signing of this Agreement.

14.11   <u>Governing Law</u>. All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Michigan, without reference to its conflict of law provisions, except to the extent the federal law of the United States requires that federal law governs.

14.12   <u>Interpretation</u>.

(a)    Definitions apply to the singular and plural forms of each term defined.

(b)    Definitions apply to the masculine, feminine, and neuter genders of each term defined.

(c)    Whenever the words "include," "includes" or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

14.13   <u>No Precedential Value</u>. The Parties agree and acknowledge that this Agreement carries no precedential value.

14.14   <u>Fair and Reasonable</u>. The Parties and their counsel believe this Agreement is a fair and reasonable compromise of the disputed claims, in the best interest of the Parties,

and have arrived at this Agreement as a result of arm's-length negotiations with the assistance of an experienced mediator.

14.15   Retention of Jurisdiction. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement.

14.16   Headings. Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement. In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

14.17   Exhibits. The exhibits to this Agreement and any exhibits thereto are an integral and material part of the Settlement. The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

14.18   Counterparts and Signatures. This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves original signed counterparts. Digital signatures shall have the same force and effect as the original.

14.19   Facsimile and Electronic Mail. Transmission of a signed Agreement by facsimile or electronic mail shall constitute receipt of an original signed Agreement by mail.

14.20   No Assignment. Each Party represents and warrants that such Party has not assigned or otherwise transferred (via subrogation or otherwise) any right, title or interest in or to any of the Released Claims.

14.21   Deadlines. If any of the dates or deadlines specified herein falls on a weekend or legal holiday, the applicable date or deadline shall fall on the next Business Day. All reference to "days" in this Agreement shall refer to calendar days, unless otherwise specified. The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

14.22   Dollar Amounts. All dollar amounts are in United States dollars.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed by their duly authorized counsel:

**SHUB & JOHNS LLC**

Dated: June 18 2024

Benjamin F. Johns
*Co-Lead Counsel on behalf of Plaintiffs*

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**

Dated: June 18 2024

Gary M. Klinger
*Co-Lead Counsel on behalf of Plaintiffs*

**FOSTER, SWIFT, COLLINS & SMITH, P.C.**

Dated: June 18 2024

Alexander S. Rusek
*On behalf of Defendant, Lansing Community College*

29

EXHIBIT A

## CLAIM FORM

**Lansing Community College ("LCC") Data Breach Litigation**
***In Re Lansing Community College Data Breach Litigation*, Case No. 1:23-cv-00738 (W.D. Mich.)**

**The DEADLINE to submit this Claim Form is postmarked: [<mark>XXXX XX, 2024</mark>]**

## I.        GENERAL INSTRUCTIONS

If you are an individual who was notified that your Personal Information was potentially compromised because of a data security incident that involved an unauthorized actor hacking LCC's computer network between December 25, 2022, and March 15, 2023 (the "Data Security Incident"), you are a Class Member and eligible for compensation.

As a Class Member, you are eligible to make a claim for **ONE (1)** of the following two options; you may **NOT** select both:

(1) Reimbursement for Actual Out-of-Pocket Losses and Attested Time ("Documented Loss Payments") (up to $2,000.00 per individual).

OR

(2) an Alternative Cash Payment, the amount of which will depend on the number of Class Members who participate in the Settlement and submit claims for Documented Loss Payments.

If the aggregate number of valid claims for Actual Out-of-Pocket Losses and Attested Time exceeds $150,000 then the payments for those claims will be reduced and paid proportionally to one another out of the $150,000 cap for these claims.

Complete information about the Settlement and its benefits are available at <mark>www.xxxxxxxxxxxxxx.com</mark>.

**Please complete this Claim Form on behalf of the individual who received a notification from Lansing Community College.**

This Claim Form may be submitted online at <mark>www.xxxxxxxxxxxxx.com</mark> or completed and mailed to the address below. Please type or legibly print all requested information, in blue or black ink. Mail your completed Claim Form, including any supporting documentation, by U.S. mail to:

> In re Lansing Community College Data Breach Litigation
> c/o Kroll Settlement Administration
> PO Box 225391
> New York, NY 10150-5391

## II. CLAIMANT INFORMATION

The Settlement Administrator will use this information for all communications regarding this Claim Form and the Settlement. If this information changes prior to distribution of cash payments, you must notify the Settlement Administrator in writing at the address above.

First Name                                    M.I.    Last Name

| | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

Alternative Name(s)

| | | | | | | | | | | | | | | | | | | | | |
|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|-|

Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                     State:          Zip Code:

Cellphone Number                              Home Telephone Number

Email Address

Date of Birth (mm/dd/yyyy)              Unique ID Number Provided on mailed Notice (if known)

### III.    CLASS MEMBERSHIP

☐ Please check this box if you received a notice related to this Class Action, and you have provided your Unique ID Number in Section II above.

☐ Please check this box if you have **not** received a letter notice but believe that you should be included in the Class. You must provide reasonable documentation demonstrating that you were impacted by the Lansing Community College Data Security Incident and are a Class Member.

### IV.    CLAIMANT SELECTION OF SETTLEMENT OPTION

### <u>You may select ONE (1) of the following options</u>:

### (1) ALTERNATIVE CASH PAYMENT

☐ If you wish to receive an Alternative Cash Payment, you must check off the box for this section, and then simply return this Claim Form.

The amount of the Alternative Cash Payment will be determined after the Settlement Fund is used to pay for reasonable Administrative Expenses, Service Awards approved by the Court, any amounts approved by the Court for the Attorney's Fee Award and Costs, Taxes, and Approved Claims for Reimbursements for Actual Out-of-Pocket Losses and Attested Time (up to the $150,000 cap).

### <u>OR</u>

### (2) REIMBURSEMENT FOR DOCUMENTED LOSSES

☐ Please check off this box for this section if you are electing to seek reimbursement for up to $2,000 of Documented Losses you incurred that are more likely than not traceable to the Lansing Community College Data Security Incident and not otherwise reimbursable by insurance. Documented Losses include unreimbursed losses and consequential expenses that are more likely than not related to the Lansing Community College Data Security Incident and incurred on or after December 25, 2022.

Examples of Documented Losses include: (i) Long distance telephone charges; (ii) cell phone minutes (if charged by the minute); (iii) internet usage charges (if either charged by the minute or incurred solely as a result of the Data Security Incident; (iv) costs of credit reports purchased between December 25, 2022 and the Claims Deadline; (v) documented costs paid for credit monitoring services and/or fraud resolution services purchased between December 25, 2022 and the Claims Deadline; (vi) documented expenses directly associated with dealing with identity theft or identity fraud related to the Data Security Incident; (vii) other documented losses incurred by Class Members that are more likely than not related to the Data Security Incident as reasonably determined by the Settlement Administrator.

In order to make a claim for a Documented Loss Payment, you **MUST** (i) fill out the information below and/or on a separate sheet submitted with this Claim Form; (ii) sign the attestation at the end of this Claim Form (Section VI); and (iii) include Reasonable Documentation supporting each claimed cost along with this Claim Form. Documented Losses need to be deemed more likely than not due to the Lansing Community College Data Security Incident by the Settlement Administrator based on the documentation you provide and the facts of the Lansing Community College Data Security Incident. **Failure to meet the requirements of this section may result in your claim being rejected by the Settlement Administrator.**

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Unreimbursed fraud losses or charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐.☐☐ | *Examples: Account statement with unauthorized charges highlighted; Correspondence from financial institution declining to reimburse you for fraudulent charges* |
| ○ Professional fees incurred in connection with identity theft or falsified tax returns | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐.☐☐ | *Examples: Receipt for hiring service to assist you in addressing identity theft; Accountant bill for re-filing tax return* |
| ○ Lost interest or other damages resulting from a delayed state and/or federal tax refund in connection with fraudulent tax return filing | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐.☐☐ | *Examples: Letter from IRS or state about tax fraud in your name; Documents reflecting length of time you waited to receive your tax refund and the amount* |
| ○ Credit freeze | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐.☐☐ | *Examples: Notices or account statements reflecting payment for a credit freeze* |
| ○ Credit monitoring that was ordered between March 2, 2023, and the Claims Deadline | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐☐☐.☐☐ | *Example: Receipts or account statements reflecting purchases made for credit monitoring and insurance services* |

| Cost Type (Fill all that apply) | Approximate Date of Loss | Amount of Loss | Description of Supporting Reasonable Documentation (Identify what you are attaching and why) |
|---|---|---|---|
| ○ Miscellaneous expenses such as notary, fax, postage, copying, mileage, and long- distance telephone charges | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Example: Phone bills, gas receipts, postage receipts; detailed list of locations to which you traveled (i.e. police station, IRS office), indication of why you traveled there (i.e. police report or letter from IRS re: falsified tax return) and number of miles you traveled to remediate or address issues related to the Lansing Community College Data Security Incident* |
| ○ Other (provide detailed description) | ☐☐ / ☐☐ / ☐☐ (mm/dd/yy) | $ ☐☐☐☐ . ☐☐ | *Please provide detailed description below or in a separate document submitted with this Claim Form* |

**If you do not submit Reasonable Documentation supporting a Documented Loss Payment claim, or your claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason and you do not cure the defect, your claim will be considered for an Alternative Cash Payment.**

## V. CERTIFICATION

By submitting this Claim Form, I certify that I am eligible to make a claim in this settlement and that the information provided in this Claim Form and any attachments are true and correct. I further submit to the jurisdiction of the Court with respect to my claim and for purposes of enforcing the releases set forth in any Final Judgment that may be entered in the Action.

I acknowledge that, as of the Effective Date of the Settlement, pursuant to the terms set forth in the Settlement Agreement, and by operation of law and the Final Judgment, I shall be deemed to release and forever discharge and shall be forever enjoined from prosecuting any claims relating to the Data Security Incident and the Released Claims against Lansing Community College and the Released Parties (as more fully defined in the Settlement Agreement and/or Final Judgment).

I declare under penalty of perjury under the laws of Michigan that the foregoing is true and correct. I understand that this claim may be subject to audit, verification, and Court review and that the Settlement Administrator may require supplementation of this Claim or additional information from me.  I also understand that all claim payments are subject to the availability of settlement funds and may be reduced in part or in whole, depending on the type of claim and the determinations of the Settlement Administrator.

_____        Date:_____
Signature:

_____
Print Name

## VI. ATTESTATION
### (REQUIRED FOR DOCUMENTED LOSS PAYMENT CLAIMS ONLY)

I, _____, declare that I suffered the Documented Losses claimed above.
       [Name]

I also attest that the Documented Losses claimed above are accurate and were not otherwise reimbursable by insurance.

I declare under penalty of perjury under the laws of my state of residence that the foregoing is true and correct. Executed on _____, in _____, _____.
          [Date]                     [City]          [State]

_____
       [Signature]

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| IN RE LANSING COMMUNITY COLLEGE DATA BREACH LITIGATION | Case No: 1:23-cv-00738-PLM<br><br>**CLASS ACTION** |

## FINAL JUDGMENT AND ORDER OF DISMISSAL

After conducting a final approval hearing on ⬛⬛⬛⬛⬛⬛, the Court hereby grants Plaintiffs' Motion for Final Approval of the Class Action Settlement with Lansing Community College, and Plaintiffs' Motion for an Award of Attorney's Fees, Costs, and Payment of Service Awards to the Settlement Class Representatives.  Judgment is hereby **ENTERED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:**

1.     This Final Judgment hereby incorporates by reference the definitions in the Settlement Agreement with Lansing Community College dated June 18, 2024 (the "Settlement Agreement"), and all terms used herein, except as otherwise expressly defined herein, shall have the same meanings as set forth in the Settlement Agreement.

2.     The Court finds that it has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) to enter this Final Judgment and that it has personal jurisdiction over

Plaintiffs, Lansing Community College (in this Action only and for purposes of this Settlement), and all Settlement Class Members.

3.      Upon the Settlement Agreement becoming effective in accordance with its terms, all of the following claims are released. Specifically, per Section 4 of the Settlement Agreement:

> Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Security Incident or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement, or to any Class Member (or the estate of any Class Member) who has been confirmed to be deceased.

4.      The Action and all Released Claims against Lansing Community College and the Released Parties are hereby dismissed with prejudice and without fees or costs, other than as specified in the Settlement Agreement, including those

costs of Notice and administration; Service Awards to the Class Representatives; and the Attorneys' Fee Award and Costs.

5.    The Court, finding no just reason for delay, directs pursuant to Rule 54(b) of the Federal Rules of Civil Procedure that the judgment of dismissal as to Lansing Community College shall be final and entered forthwith.

**SO ORDERED** this _____ day of _____, _____.

_____
HON. PAUL L. MALONEY
United States District Judge

EXHIBIT C

**Lansing Community College ("LCC") Data Breach Litigation**
*In Re Lansing Community College Data Breach Litigation*, Case No. 1:23-cv-00738 (W.D. Mich.)

# Notice of Lansing Community College Data Breach
# Class Action Settlement

*This is <u>not</u> a solicitation from a lawyer. This is a Court approved Notice.*
*Please read this Notice carefully and completely.*

<u>**THIS NOTICE MAY AFFECT YOUR RIGHTS. PLEASE READ IT CAREFULLY.**</u>

- A proposed Settlement arising out of a data security incident has been reached with Lansing Community College. Between December 25, 2022, and March 15, 2023, an unauthorized actor was able to access files stored on LCC's computer systems. As a result, Personal Information of individuals may have been accessed (the "Data Security Incident"). Impacted Personal Information may have included names and Social Security numbers relating to LCC employees, students, potential students, vendors, and others. If you were notified by Lansing Community College that your Personal Information may have been compromised because of the Lansing Community College Data Security Incident, you are included in this Settlement as a member of the Settlement Class.

- Under the Settlement, Lansing Community College has agreed to establish a $1,450,000.00 Settlement Fund to be used to pay for one of the following benefits for Class Members:

  - <u>**Documented Loss Payments**</u> – reimbursement for Actual Out-of-Pocket Losses and Attested Time, i.e., time and money spent or lost, that is more likely than not related to the LCC Data Security Incident (up to $2,000.00 per individual or $150,000 in the aggregate), not otherwise reimbursable by insurance; OR

  - <u>**Alternative Cash Payments**</u> – a cash payment, the amount of which will depend on the number of Class Members who participate in the Settlement.

- The Settlement Fund will also be used to pay for the costs of the settlement administration, court-approved Service Awards for the named Plaintiffs, and the Attorney's Fee Award and Costs. In addition, Lansing Community College has agreed to undertake certain remedial measures and enhanced security measures that they will continue to implement.

- Your legal rights will be affected whether you act or do not act. <u>You should read this entire Notice carefully.</u>

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **FILE A CLAIM FORM**<br>DEADLINE: xxxx xx, 2024 | Submitting a Claim Form is the only way that you can receive any of the monetary Settlement Benefits provided by this Settlement, including Documented Loss Payments and Alternative Cash Payments.<br>If you submit a Claim Form, you will give up the right to sue Lansing Community College and certain Released Parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **EXCLUDE YOURSELF FROM THIS SETTLEMENT**<br>DEADLINE: xxxx xx, 2024 | This is the only option that allows you to sue, continue to sue, or be part of another lawsuit against Lansing Community College, or certain Released Parties (as defined in the Settlement Agreement), for the claims this Settlement resolves.<br>If you exclude yourself, you will give up the right to receive any Settlement Benefits from this Settlement. |
| **OBJECT TO OR COMMENT ON THE SETTLEMENT**<br>DEADLINE: xxxx xx, 2024 | You may object to the Settlement by writing to the Court and informing it why you do not think the Settlement should be approved. You can also write the Court to provide comments or reasons why you support the Settlement. You will still be bound by the Settlement if it is approved, and you will not be allowed to exclude yourself from the Settlement.<br>If you object, you may also file a Claim Form to receive Settlement Benefits, but you will give up the right to sue Lansing Community College and Released Parties in a separate lawsuit about the legal claims this Settlement resolves. |
| **GO TO THE "FINAL APPROVAL" HEARING**<br>DATE: xxxx xx, 2024 | You may attend the Final Approval Hearing where the Court may hear arguments concerning approval of the Settlement. If you wish to speak at the Final Approval Hearing, you must make a request to do so in your written objection or comment. You are <u>not</u> required to attend the Final Approval Hearing. |
| **DO NOTHING** | If you do nothing, you will not receive any of the monetary Settlement Benefits and you will give up your rights to sue Lansing Community College and certain Released Parties for the claims this Settlement resolves. |

**This Settlement affects your legal rights even if you do nothing.**
**Questions? Go to www.xxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement. No Settlement Benefits or payments will be provided unless the Court approves the Settlement and it becomes final.

## BASIC INFORMATION

**1.    Why did I get this Notice?**

A court authorized this Notice because you have the right to know about the proposed Settlement of this class action lawsuit and about all of your rights and options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The case is known as *In re Lansing Community College Data Breach Litigation*, **Case No. 1:23-cv-00738 (W.D. Mich.),** before Judge Paul L. Maloney. The people who filed this lawsuit are called the "Plaintiffs" and the entity they sued, Lansing Community College, is called the "Defendant." The Plaintiffs and the Defendant agreed to this Settlement.

**2.    What is this lawsuit about?**

In or around March 14, 2023, LCC became aware of a data security incident that involved an unauthorized actor hacking LCC's internal computer systems. A subsequent investigation determined that, during the Data Security Incident, an unauthorized actor had accessed LCC's network between December 25, 2022, and March 15, 2023, and was able to access the personal data of Plaintiffs and those similarly situated. LCC began notifying impacted individuals about the Data Security Incident on or around June 30, 2023.

Plaintiffs claim that Lansing Community College failed to adequately protect their Personal Information and that they were injured as a result. Lansing Community College denies any wrongdoing, and no court or other entity has made any judgment or other determination of any wrongdoing or that the law has been violated. Lansing Community College denies these and all other claims made in the Action. By entering into the Settlement, Lansing Community College is not admitting that it did anything wrong.

**3.    Why is this a class action?**

In a class action, one or more people called the Class Representatives sue on behalf of all people who have similar claims. Together all of these people are called a Class or Class Members. One court resolves the issues for all Class Members, except for those Class Members who exclude themselves from the Class.

The Class Representatives in this case are Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette.

**4.    Why is there a Settlement?**

The Class Representatives (individually and on behalf of the Class) and Lansing Community College do not agree about the claims made in this Action. The Action has not gone to trial, and the Court has not decided in favor of the Class Representatives or Lansing Community College. Instead, the Class Representatives and Lansing Community College have agreed to settle the Action. The Class Representatives and attorneys for the Class, the court-appointed Proposed Settlement Class Counsel, believe the Settlement is best for all Class Members because of the risks and uncertainty associated with continued litigation and the nature of the defenses raised by Lansing Community College.

## WHO IS INCLUDED IN THE SETTLEMENT

**5.    How do I know if I am part of the Settlement?**

The Court has decided that everyone who fits the following description is a Class Member:

All natural persons whose Personal Information was compromised in the Data Security Incident

If you were notified by Lansing Community College that your Personal Information may have been compromised because of the Lansing Community College Data Security Incident, you are included in this Settlement as a member of the Settlement Class. If you received this Notice of Settlement by mail, you may be a Class Member and your legal rights may be affected by this Settlement.  If you did not receive Notice by mail, or if you have any questions as to whether you are a Class Member, you may contact the Settlement Administrator.

**6.    Are there exceptions to individuals who are included as Class Members in the Settlement?**

Yes, the Settlement does not include: (1) the judges presiding over the Action and members of their immediate families and their staff; (2) LCC, its subsidiaries, parent companies, successors, predecessors, and any entity in which LCC or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

**7.    What if I am still not sure whether I am part of the Settlement?**

If you are still not sure whether you are a Class Member, you may go to the Settlement Website at www.xxxxxxxxx.com, or call the Settlement Administrator's toll-free number at 1-XXX-XXX-XXXX.

## The Settlement Benefits—What you Get if You Qualify

**8.    What does the Settlement provide?**

The Settlement will provide Class Members with the opportunity to select and make a claim for one the following Settlement Benefits, which are discussed in further detail below:

  (1)   Reimbursement for Actual Out-of-Pocket Losses and Attested Time ("Documented Loss Payments") (up to $2,000.00 per individual or $150,000 in the aggregate).

          <u>OR</u>

  (2)   an Alternative Cash Payment, the amount of which will depend on the number of Class Members who participate in the Settlement.

**You may only elect ONE of the above options, which are explained in more detail below.**

In addition, Lansing Community College has agreed to take certain remedial measures and enhance security measures as a result of this Action, as detailed in the Settlement Agreement and in Question 10 below.

Please review Number 12 carefully for additional information regarding the order in which Settlement Benefits are paid from the Settlement Fund. This additional information may impact your decision as to which of the three Settlement Benefit options is the best option for you.

### A.    Documented Loss Payment.

You may elect to submit a Claim Form for reimbursement of Documented Losses. If you spent money remedying or addressing identity theft and fraud that was more likely than not related to the Lansing Community College Data Security Incident or you spent money to protect yourself from future harm because of the Lansing Community College Data Security Incident, you may make a claim for a Documented Loss Payment for reimbursement of up to $2,000 in Documented Losses, which is subject to an aggregate cap of $150,000.

Documented Losses include unreimbursed losses and consequential expenses that are more likely than not related to the Lansing Community College Data Security Incident and incurred on or after December 25, 2022. Examples of Documented Losses include: (i) Long distance telephone charges; (ii) cell phone minutes (if charged by the minute); (iii) internet usage charges (if either charged by the minute or incurred solely as a result of the Data Security Incident); (iv) costs of credit reports purchased between December 25, 2022 and the Claims Deadline; (v) documented costs paid for credit monitoring services and/or fraud resolution services purchased between December 25, 2022 and the Claims Deadline; (vi) documented expenses directly associated with dealing with identity theft or identity fraud related to the Data Security Incident; (vii) other documented losses incurred by Class Members that are more likely than not related to the Data Security Incident as reasonably determined by the Settlement Administrator. To protect the Settlement Fund and valid claims, all Claim Forms submitted that seek payment related to credit or debit card fraudulent transactions will be carefully scrutinized by the Settlement Administrator.

Claims for Documented Loss Payments must be supported by Reasonable Documentation. Reasonable Documentation means written documents supporting your claim, such as credit card statements, bank statements, invoices, telephone records, and receipts.

Individual payments for Documented Losses may be reduced or increased depending on the number of Class Members that participate in the Settlement.

To receive a Documented Loss Payment, you must submit a completed Claim Form electing to receive a Documented Loss Payment. If you file a Claim Form for a Documented Loss Payment and it is rejected by the Settlement Administrator and you do not correct it, your Claim Form will be considered as a claim for Alternative Cash Payment.

### B. Alternative Cash Payment.

In the alternative to a Documented Loss Payment, you may elect to receive an Alternative Cash Payment. The amount of the Alternative Cash Payment will vary depending on the number of valid claims that are submitted. To receive an Alternative Cash Payment, you must submit a completed Claim Form electing to receive an Alternative Cash Payment.

You are <u>not</u> required to provide Reasonable Documentation with your Claim Form to receive an Alternative Cash Payment. Alternative Cash Payments may be reduced or increased *pro rata* (equal share) depending on the number of Class Members that participate in the

**Questions? Go to www.xxxxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**
**This Settlement affects your legal rights even if you do nothing.**
4

Settlement and the amount of money that remains in the Cash Fund after payments of other Settlement Benefits and charges with priority for payment under the Settlement. *See* Number 9 below.

**9.     How will Settlement Benefits be paid?**

Before determining which Settlement Benefit option from the Settlement is best for you (selecting an Alternative Cash Payment or Documented Loss Payment), it is important for you to understand how Settlement payments will be made. The Settlement Fund will be used to make payments in the following order: (i) all Administrative Expenses, (ii) Fee Award and Costs and Plaintiff Service Awards, as approved by the Court, (iii) payment for valid claims for Documented Loss Payments pursuant to Section 3.2(a), up to the $150,000 cap; (vi) approved Alternative Cash Payments on a *pro rata* basis to exhaust the balance of the Net Settlement Fund. Each Class Member may submit only one claim for himself or herself but may submit additional claims for other Class Members who are under the age of eighteen (18) at the time of the claim submission, and for whom they are a parent or legal guardian.

Court awarded attorney's fees up to a maximum of one-third (1/3) of the $1,450,000.00 Settlement Fund, reasonable costs and expenses incurred by attorneys for the Class (not to exceed $50,000) (referred to collectively as Fee Award and Costs), Administrative Expenses for costs of the settlement administration, and Service Awards of up to $1,500 to each of the Class Representatives will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts. The remainder of the Settlement Fund will be distributed in the following order:

**10.     Tell me more about Lansing Community College's remedial measures and enhanced security measures.**

As a result of the Action, Lansing Community College has agreed to institute policies, procedures, and additional security-related remedial measures, including: expanding use of Multi-Factor Authentication ("MFA"); discontinuing the use of the vulnerable application attacked by the unauthorized actor; updating software ("patching") and systems; rebuilding compromised systems; resetting passwords of compromised accounts; implementing new and additional Endpoint Detection and Response ("EDR") software; and reducing the number of inactive and legacy user accounts.

**11.     What is the total value of the Settlement?**

The Settlement provides a $1,450,000 Settlement Fund, and, additionally, remedial actions will be taken by Lansing Community College for the benefit of the Class. Any court-approved Fee Award and Costs, Service Awards to the Class Representatives, taxes due on any interest earned by the Settlement Fund, if necessary, and any notice and settlement administration expenses will be paid out of the Settlement Fund, and the balance ("Net Settlement Fund") will be used to pay for the above Settlement Benefits.

As part of the Settlement, as described above and in the Settlement Agreement, LCC has also adopted, continued, and/or implemented, or will adopt, continue, or implement, reasonable data and information security measures, at its expense, which are designed to strengthen LCC's data and information security. Any costs associated with Lansing Community College's remedial and enhanced security measures will be paid by Lansing Community College in addition to the Settlement Fund.

**12.     What am I giving up to get a Settlement Benefit or stay in the Class?**

Unless you exclude yourself, you are choosing to remain in the Class. If the Settlement is approved and becomes final, all of the Court's orders will apply to you and legally bind you. You will not be able to sue, continue to sue, or be part of any other lawsuit against Lansing Community College and the Released Parties about the legal issues in this Action, resolved by this Settlement and released by the Class Action Settlement Agreement and Release. The specific rights you are giving up are called Released Claims (*see* next question).

**13.     What are the Released Claims?**

In exchange for the Settlement, the Class Representatives and all Class Members on behalf of themselves, their heirs, assigns, executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Security Incident or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement, or to any Class Member (or the estate of any Class Member) who has been confirmed to be deceased.

More information is provided in the Class Action Settlement Agreement and Release which is available at www.xxxxxxxxxxxxxxxx.com.

### HOW TO GET SETTLEMENT BENEFITS—SUBMITTING A CLAIM FORM

**14.    How do I make a claim for Settlement Benefits?**

You must complete and submit a Claim Form by **xxxx xx, 2024**. Claim Forms may be submitted online at www.xxxxxxxxxxxxx.com, or printed from the website and mailed to the Settlement Administrator at the address on the form. Claim Forms are also available by calling 1-XXX-XXX-XXXX or by writing to In re Lansing Community College Data Breach Litigation, c/o Kroll Settlement Administration, PO Box 225391, New York, NY 10150-5391. The quickest way to file a claim is online.

If you received a Notice by mail, use your Claim Number to file your Claim Form. If you lost or do not know your Claim Number, please call 1-XXX-XXX-XXXX to obtain it.

You may submit a claim for either: (i) an Alternative Cash Payment; **OR** (ii) Documented Loss Payment by submitting a Claim Form on the Settlement Website, or by downloading, printing, and completing a Claim Form, and mailing it to the Settlement Administrator. You may only select one form of Settlement Relief.

**15.    How do I make a claim for an Alternative Cash Payment?**

To file a claim for an Alternative Cash Payment, you must submit a valid Claim Form electing to receive the Alternative Cash Payment. To submit a claim for an Alternative Cash Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2024.**

If you wish to receive your payment via digital payment method options instead of a check, simply provide your email address (optional). Anyone who submits a valid claim for an Alternative Cash Payment and does not elect to receive a digital payment, will receive their payment via regular check sent through U.S. Mail.

Instructions for filling out a claim for an Alternative Cash Payment are included on the Claim Form. You may access the Claim Form at www.xxxxxxxxxxxxxx.com.

The deadline to file a claim for an Alternative Cash Payment is **xxxx xx, 2024**. Claims must be filed or postmarked if mailed by this deadline.

**17.    How do I make a claim for a Documented Loss Payment for reimbursement?**

To file a claim for a Documented Loss Payment of up to $2,000 for reimbursement of Documented Losses, you must submit a valid Claim Form electing to receive a Documented Loss Payment. To submit a claim for a Documented Loss Payment, you may either complete a Claim Form on the Settlement Website or print and mail a completed Claim Form to the Settlement Administrator, postmarked on or before **xxxx xx, 2024.**

Claims for Documented Losses will be capped at $150,000. If the aggregate amount of valid claims for Documented Loss Payments exceeds $150,000 then the payments for those claims will be reduced and paid proportionally to one another out of the $150,000 cap for these claims.

The Claim Form requires that you sign the attestation regarding the information you provided <u>and</u> that you include Reasonable Documentation, such as credit card statements, bank statements, invoices, telephone records, and receipts.

If your claim for a Documented Loss Payment is rejected by the Settlement Administrator and you do not correct it, your claim for a Documented Loss Payment will instead be considered a claim for an Alternative Cash Payment.

Instructions for filling out a claim for a Documented Loss Payment are included on the Claim Form. You may access the Claim Form at www.xxxxxxxxxxxxxxx.com.

The deadline to file a claim for a Documented Loss Payment is **xxxx xx, 2024.** Claims must be filed (or postmarked if mailed) by this deadline.

**18.    What happens if my contact information changes after I submit a claim?**

If you change your mailing address or email address after you submit a Claim Form, it is your responsibility to inform the Settlement Administrator of your updated information. You may notify the Settlement Administrator of any changes by calling 1-XXX-XXX-XXXX or by writing to:

> In re Lansing Community College Data Breach Litigation
> c/o Kroll Settlement Administration
> PO Box 225391
> New York, NY 10150-5391

**19.    When and how will I receive the Settlement Benefits I claim from the Settlement?**

Payment for valid claims for an Alternative Cash Payment or a Documented Loss Payment will be provided by the Settlement Administrator after the Settlement is approved and becomes final. You may elect to receive payment for valid claims for an Alternative Cash Payment or Documented Loss Payment via PayPal, Venmo, or digital payment instead of a check, by submitting your e-mail address with your Claim Form. Anyone who does not elect to receive payment via digital payment, will receive their payment via regular check sent through U.S. Mail.

The approval process may take time. Please be patient and check www.xxxxxxxxxxxxxxx.com for updates.

**20.     What happens if money remains after all of the Settlement Claims are paid?**

None of the money in the $1,450,000.00 Settlement Fund will ever be paid back to Lansing Community College. Any money left in the Settlement Fund after 120 days after the distribution of payments to Class Members will be distributed *pro rata* (equal share) among all Class Members with approved claims for Alternative Cash Payments.

## THE LAWYERS REPRESENTING YOU

**21.     Do I have a lawyer in this case?**

Yes, the Court has appointed Benjamin F. Johns of Shub & Johns LLC, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Proposed Settlement Class Counsel to represent you and the Class for the purposes of this Settlement. You may hire your own lawyer at your own cost and expense if you want someone other than Proposed Settlement Class Counsel to represent you in this Action.

**22.     How will Proposed Settlement Class Counsel be paid?**

Proposed Settlement Class Counsel will file a motion asking the Court to award them attorneys' fees of up to a maximum of one-third (1/3) of the $1,450,000.00 Settlement Fund, plus the reimbursement of their reasonable costs and expenses (not to exceed $50,000) (referred to collectively as "Fee Award and Costs"). They will also ask the Court to approve up to $1,500 Service Awards to each of the Class Representatives for participating in this Action and for their efforts in achieving the Settlement. If awarded, these amounts will be deducted from the Settlement Fund before making payments to Class Members. The Court may award less than these amounts.

Proposed Settlement Class Counsel's application for attorneys' fees and expenses, and Service Awards will be made available on the Settlement Website at www.xxxxxxxx.com before the deadline for you to comment or object to the Settlement. You can request a copy of the application by contacting the Settlement Administrator, at 1-XXX-XXX-XXXX.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you are a Class Member and want to keep any right you may have to sue or continue to sue Lansing Community College and/or the Released Parties on your own based on the claims raised in this Action or released by the Released Claims, then you must take steps to get out of the Settlement. This is called excluding yourself from – or "opting out" of – the Settlement.

**23.     How do I get out of the Settlement?**

To exclude yourself from the Settlement, you must complete and sign a Request for Exclusion. The Request for Exclusion must be in writing and identify the case name *In Re Lansing Community College Data Breach Litigation*, Case No. 1:23-cv-00738-PLM pending in the United States District Court for the Western District of Michigan before the Honorable Paul L. Maloney; state the name, address and telephone number and unique identifier of the Class Members seeking exclusion; identify any lawyer representing the Class Member; be physically signed by the Person(s) seeking exclusion; and must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in *In Re Lansing Community College Data Breach Litigation*, Case No. 1:23-cv-00738-PLM pending in the United States District Court for the Western District of Michigan" The Request for Exclusion must be postmarked or received by the Settlement Administrator at the address below no later than xxxx xx, 2024:

> In re Lansing Community College Data Breach Litigation
> c/o Kroll Settlement Administration
> PO Box 225391
> New York, NY 10150-5391

You cannot exclude yourself by telephone or by e-mail.

**24.     If I exclude myself, can I still get a Settlement Payment as part of this class action settlement?**

No. If you exclude yourself, you are telling the Court that you do not want to be part of the Settlement. You can only get a cash payment if you stay in the Settlement and submit a valid Claim Form.

**25.     If I do not exclude myself, can I sue Lansing Community College for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue Lansing Community College and Released Parties for the claims that this Settlement resolves. You must exclude yourself from this Action to start or continue with your own lawsuit or be part of any other lawsuit against Lansing Community College or any of the Released Parties. If you have a pending lawsuit, speak to your lawyer in that case immediately.

## OBJECT TO OR COMMENT ON THE SETTLEMENT

**26.     How do I tell the Court that I do not like the Settlement?**

You can ask the Court to deny approval of the Settlement by filing an objection. You cannot ask the Court to order a different settlement; the Court can only approve or reject the Settlement. If the Court denies approval, no Settlement Payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) identify the case name and number; (b) state the Class Member's full name, current mailing address, and telephone number; (c) contain a statement by the Class Member that he or she believes themself to be a member of the Settlement Class; (d) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Security Incident); (e) identify the specific factual and legal grounds for the objection; (f) identify whether the Objection is an objection to the Settlement in part or in whole; (g) state whether the objection applies only to the objector, a subset of the Settlement Class, or the entire Settlement Class; (h) identify all counsel representing the Class Member, if any; (i) include a list, including case name, court, and docket number, of all other cases in which the objector and/or the objector's counsel has filed an objection to any proposed class action settlement in the past five (5) years; (j) include all documents or writings that the Class Member desires the Court to consider; (k) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing; and (l) contain the signature of the Class Member or the Class Member's duly authorized attorney or representative. All objections must be submitted to the Court either by mailing them to the Clerk of Court's Office, U.S. District Court for the Western District of Michigan, 107 Federal Bldg., 410 W Michigan Ave., Kalamazoo MI 49007, or filing in person with the Court or postmarked on or before **xxxx xx, 2024**.

**27.     What is the difference between objecting and requesting exclusion?**

Objecting is telling the Court you do not like something about the Settlement. You can object only if you stay in the Class (that is, do not exclude yourself). Requesting exclusion is telling the Court you do not want to be part of the Class or the Settlement. If you exclude yourself, you cannot object to the Settlement because it no longer affects you.

## THE FINAL APPROVAL HEARING

**28.     When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing on **xxxx xx, 2024** at __:___ .m. in Courtroom _ before the Honorable Paul L. Maloney, U.S.D.J., U.S. District Court for the Western District of Michigan, 107 Federal Bldg., 410 W Michigan Ave., Kalamazoo MI 49007.

The date and time of the Final Approval Hearing is subject to change without further notice to the Settlement Class. Class Members should monitor the Settlement Website or the Court's online docket site to confirm whether the date for the Final Approval Hearing is changed. Please note that the hearing may be held via telephone or video conference. All details about the Final Approval Hearing will be posted on the settlement website.

At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate, and will decide whether to approve: the Settlement; Proposed Settlement Class Counsel's application for Fee Award and Costs; and the Service Awards to the Class Representatives. If there are objections, the Court will consider them. The Court will also listen to people who have asked to speak at the hearing.

**29.     Do I have to come to the Final Approval Hearing?**

No. Proposed Settlement Class Counsel will answer any questions the Court may have. However, you are welcome to attend at your own expense. If you send an objection, you do not have to come to Court to talk about it. As long as you mail your written objection on time the Court will consider it.

**30.     May I speak at the Final Approval Hearing?**

Yes. If you wish to attend and speak at the Final Approval Hearing, you must indicate this in your written objection (*see* Question 26). Your objection must state that it is your intention to appear at the Final Approval Hearing and must identify any witnesses you may call to testify or exhibits you intend to introduce into evidence at the Final Approval Hearing. If you plan to have your attorney speak for you at the Final Approval Hearing, your objection must also include your attorney's name, address, and phone number.

**Questions? Go to www.xxxxxxxxxxxxxxx.com or call 1-XXX-XXX-XXXX**
**This Settlement affects your legal rights even if you do nothing.**

## IF YOU DO NOTHING

**31.    What happens if I do nothing at all?**

If you are a Class Member and you do nothing, you will not receive any Settlement Benefits. You will also give up certain rights, including your right to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Lansing Community College or any of the Released Parties about the legal issues in this Action and released by the Settlement Agreement.

## GETTING MORE INFORMATION

**32.    How do I get more information?**

This Notice summarizes the proposed Settlement. For the precise terms and conditions of the Settlement, please see the Settlement Agreement available at www.xxxxxxxxxx.com, or by contacting Proposed Settlement Class Counsel (*see* below), by accessing the Court docket in this case, for a fee, through the Court's ECF System at PACER, https://pacer.uscourts.gov/, or by visiting the office of the Clerk of Court's Office, U.S. District Court for the Western District of Michigan, 107 Federal Bldg., 410 W Michigan Ave., Kalamazoo MI 49007.

If you have questions about the proposed Settlement or anything in this Notice, you may contact Proposed Settlement Class Counsel at:

SHUB & JOHNS LLC
Benjamin F. Johns
Four Tower Bridge
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
bjohns@shublawyers.com

MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC
Gary M. Klinger
227 W. Monroe Street
Suite 2100
Chicago, IL 60606
866-252-0878
gklinger@milberg.com

**PLEASE DO NOT CONTACT THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE LANSING COMMUNITY
COLLEGE DATA BREACH
LITIGATION

Case No: 1:23-cv-00738-PLM

**CLASS ACTION**

## ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court is Plaintiffs Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette (collectively, "Plaintiffs") Unopposed Motion for Preliminary Approval of the Class Action Settlement (the "Motion"), brought individually and on behalf of those similarly situated. The Court, having considered the Motion, the supporting Brief, the Parties' Settlement Agreement dated June 18, 2024 (the "Settlement Agreement," which is attached to Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement as Exhibit C), including the proposed Long Form Notice, Short Form Notice, and Claim Form (Exhibits C, E, and A, respectively, to the Settlement Agreement); the pleadings and other papers filed in this Action; and the statements of counsel and the Parties, and for good cause shown, hereby grants the motion as follows:

## Preliminary Approval of Settlement Agreement

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the meanings ascribed to those terms in the Settlement Agreement.

2.      This Court has jurisdiction over the Litigation, Plaintiffs, all Settlement Class Members, and Defendant Lansing Community College.

3.      The Court finds that the proposed Settlement set forth in the Settlement Agreement is sufficiently fair, reasonable and adequate such that it is hereby preliminarily approved and notice of the Settlement should be provided to the Settlement Class Members and that a hearing shall be held as set forth below.

## Class Certification

4.      Solely for purposes of the Settlement, the Court conditionally certifies the following class pursuant to Fed. R. Civ. P. 23(a) and (b)(3) ("Settlement Class"):

**All natural persons whose Personal Information was compromised in the Data Security Incident.**

5.      Excluded from the Settlement Class are: (1) the Judges presiding over the Action and members of their immediate families and their staff; (2)  Lansing Community College, its subsidiaries, parent companies, successors, predecessors, and any entity in which Lansing Community College or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such

excluded natural person.

6.    Subject to final approval of the Settlement, the Court finds and concludes, for settlement purposes only, that the prerequisites to a class action, set forth in Fed. R. Civ. P. 23(a) and (b), are satisfied in that:

   a.  the Settlement Class is so numerous that joinder of all members is impracticable;

   b.  there are questions of law or fact common to the Settlement Class;

   c.  Plaintiffs and Proposed Settlement Class Counsel (as defined below) fairly and adequately represent the Settlement Class;

   d.  the claims of Plaintiffs are typical of those of Settlement Class Members;

   e.  common issues predominate over any individual issues affecting the members of the Settlement Class;

   f.  Plaintiffs fairly and adequately protect and represent the interests of all members of the Settlement Class, and Plaintiffs' interests are aligned with the interests of all other members of the Settlement Class; and

   g.  settlement of the Litigation on a class-wide basis is superior to other means of resolving this matter.

7.    The Court, subject to final approval, appoints Benjamin F. Johns of Shub & Johns LLC and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman LLC as Proposed Settlement Class Counsel, having determined that the requirements of Rule 23(g) of the Federal Rules of Civil Procedure are fully satisfied by this appointment.

8.    The Court, subject to final approval, hereby appoints Plaintiffs Ivory Whitby, Sameer Shah, Gabriel Banish, William Barber, Lindsay Luoma, and Chelsea Lee Ouimette as the Class Representatives, for settlement purposes only, on behalf of the Settlement Class.

### Notice to Settlement Class Members

9.    Pursuant to Federal Rule of Civil Procedure 23(e), the Court approves the Long Form Notice and the Short Form Notice (the "Settlement Notices"), attached to the Settlement Agreement as Exhibits C and E, respectively, and finds that the dissemination of the Settlement Notices substantially in the manner and form set forth in § 6 of the Settlement Agreement complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process of law, and is the best notice practicable under the circumstances.

10.    The Court further approves the Claim Form, attached as Exhibit A to the Settlement Agreement, which will be available to Settlement Class Members through the Settlement Website and by request.

11.    The notice procedures described above and outlined more specifically in the Settlement Agreement are hereby found to be the best means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed Settlement Agreement and the Final Approval Hearing to all persons affected by and/or entitled to participate in the Settlement

Agreement, in full compliance with the notice requirements of Rule 23 of the Federal Rules of Civil Procedure and due process of law.

12.    The Court hereby orders that, within fourteen (14) days of entry of this Order, Lansing Community College shall provide to the Settlement Administrator the Settlement Class Members' contact information that is currently in Lansing Community College's possession, including names and physical addresses.

13.    No later than thirty (30) days from the date of this Order preliminarily approving the Settlement (the "Notice Date"), Proposed Settlement Class Counsel shall cause the Settlement Administrator to send the Short Notice via U.S. mail to each Settlement Class member and shall cause the Long Notice to be available on the Settlement Website, thereby making it accessible to the Settlement Class as stated in the proposed Notice Plan.

14.    Contemporaneously with seeking Final Approval of the Settlement, Proposed Settlement Class Counsel and Lansing Community College shall cause to be filed with the Court an appropriate affidavit or declaration from the Settlement Administrator with respect to complying with the Notice Plan.

15.    All costs incurred in connection with the Notice Plan, including but not limited to, the dissemination of the Settlement Notices and Claim Form to Settlement Class members, shall be paid from the Settlement Fund.

16.    The Settlement Notices and Claim Form satisfy the requirements of due

process and of Rule 23(e) of the Federal Rules of Civil Procedure and thus are approved for dissemination to the Settlement Class. The Claim Form shall be made available to the Settlement Class as set forth in the Notice Plan and shall be made available to any potential Class Member that requests one.

**Settlement Class Members' Responses and Scheduling Final Approval Hearing**

17.    Settlement Class Members may opt-out or object to the Settlement up to sixty (60) days from the Notice Date (the "Opt-Out Deadline").

18.    Any member of the Settlement Class who wishes to be excluded ("opt out") from the Settlement Class must send a written request to the designated Post Office Box established by the Settlement Administrator postmarked on or before the Opt-Out Deadline. Members of the Settlement Class may not opt-out of the Settlement by submitting requests to opt-out as a group or class but must, in each instance, individually and personally sign and submit an opt-out request. All Settlement Class Members that opt-out of the Settlement will not be eligible to receive any benefits under the Settlement, will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their ability to independently pursue any claims they may have against Lansing Community College.

19.    Any member of the Settlement Class who does not properly and timely opt-out of the Settlement shall, upon entry of the Order and Final Judgment, be

bound by all the terms and provisions of the Settlement Agreement and Release, whether or not such Settlement Class Member objected to the Settlement and whether or not such Settlement Class Member received consideration under the Settlement Agreement.

20.    The Court adopts the following schedule for the remaining events in this case, which ensures that the appropriate state and federal officials are served with the notification required by the Class Action Fairness Act:

| Event | Date |
|-------|------|
| Lansing Community College provides CAFA Notice required by 28 U.S.C. § 1715(b) | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval |
| Lansing Community College to provide contact information for Settlement Class Members to Settlement Administrator | Within 14 days after entry of Preliminary Approval Order |
| Notice Plan commences | Within 30 days after entry of Preliminary Approval Order |
| Notice Plan concludes | Within 45 days after entry of Preliminary Approval Order |
| Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d) | 90 days after the appropriate governmental officials are served with CAFA Notice |
| Postmark deadline for Request for Exclusion (Opt-Out) or Objections | 60 days after commencement of Notice Plan |
| Deadline to file Plaintiffs' Motion for Attorneys' Fees, Expenses, and Service Awards | No later than 7 days prior to the Objection Deadline |
| Deadline to file Plaintiffs' Motion for Final Approval of the Settlement Agreement | No later than 14 days prior to the Final Approval Hearing |

| Postmark / Filing Deadline for Filing Claims | 90 days after commencement of the Notice Plan |
| Deadline for Plaintiffs to file any Response to Objections or Supplement to Motion for Final Approval | No later than 7 days prior to the Final Approval Hearing |
| Deadline for Settlement Administrator to File or Cause to be Filed, if Necessary, a Supplemental Declaration with the Court | At least 5 days prior to the Final Approval Hearing |
| Final Approval Hearing | To be held no earlier than one hundred twenty (120) days after the entry of the Preliminary Approval Order |

21.    A hearing on the Settlement (the "Final Approval Hearing") shall be held before this Court on a date set by the Court no earlier than one hundred twenty (120) days after the entry of this Order.

22.    At the Final Approval Hearing, the Court will consider (a) the fairness, reasonableness, and adequacy of the proposed class Settlement and whether the Settlement should be granted final approval by the Court; (b) dismissal with prejudice of the Litigation; (c) entry of an order including the Release; (d) entry of the Final Approval Order; and (e) entry of final judgment in this Litigation. Proposed Settlement Class Counsel's application for an award of attorney's fees and costs and request for the court to award a service award to the named Plaintiffs shall also be heard at the time of the hearing.

23.    The date and time of the Final Approval Hearing shall be subject to adjournment by the Court without further notice to the members of the Settlement

Class, other than that which may be posted by the Court. Should the Court adjourn the date for the Final Approval Hearing, that shall not alter the deadlines for mailing of Notice, the Opt-Out deadline, or the deadlines for submissions of settlement objections, claims, and notices of intention to appear at the Final Approval Hearing unless those dates are explicitly changed by subsequent Order. The Court may also decide to hold the hearing via zoom or telephonically. Instructions on how to appear at the Final Approval Hearing will be posted on the Settlement Website.

24.     Any person or entity who or which does not elect to be excluded from the Settlement Class may, but need not, enter an appearance through its own attorney. Settlement Class Members that do not timely object or opt out and that do not have an attorney enter an appearance on their behalf will be represented by Proposed Settlement Class Counsel.

25.     Any person or entity who or which does not elect to be excluded from the Settlement Class may object to the proposed Settlement. Any Settlement Class Member may object to, among other things, (a) the proposed Settlement, (b) entry of Final Approval Order and the judgment approving the Settlement, (c) Settlement Class Counsel's application for fees and expenses, and/or (d) the service award request, by mailing a written objection, with a postmark date no later than the Objection Date, to Proposed Settlement Class Counsel and Lansing Community College's counsel. The Settlement Class Member making the objection (the

"Objector"), or his or her counsel, may also file an objection with the Court through the Court's Electronic Court Filing ("ECF") system, with service on Proposed Settlement Class Counsel and Lansing Community College's Counsel made through the ECF system. For all objections mailed to Proposed Settlement Class Counsel and counsel for Lansing Community College, Proposed Settlement Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement.

26.    The Objector's objection must be either (1) filed with the Court no later than sixty (60) days after the Notice Date, or (2) mailed to Proposed Settlement Class Counsel and Lansing Community College's counsel, with a postmark date of no later than sixty (60) days after the Notice Date. To be valid, the objection must: (a) state the Class Member's full name, current mailing address, and telephone number; (b) include proof that the Class Member is a member of the Settlement Class (e.g., copy of the settlement notice, copy of the original notice of the Data Security Incident); (c) identify the specific factual and legal grounds for the objection; (d) identify all counsel representing the Class Member in connection with the objection, if any; and (e) contain a statement regarding whether the Class Member (or counsel of his or her choosing) intends to appear at the Final Approval Hearing.

27.    Only Settlement Class Members that have filed and served valid and timely notices of objection shall be entitled to be heard at the Final Approval Hearing. Any Settlement Class Member who does not timely file and serve an

objection in writing in accordance with the procedure set forth in the Class Notice and mandated in this Order shall be deemed to have waived any objection to (a) the Settlement; (b) the Release; (c) entry of Final Approval Order or any judgment; (d) Proposed Settlement Class Counsel's application for fees, costs, and expenses; and/or (e) the service award request for the named Plaintiffs, whether by appeal, collateral attack, or otherwise.

28.    Settlement Class Members need not appear at the hearing or take any other action to indicate their approval of the Settlement.

29.    Upon entry of the Order and Final Judgment, all members of the Settlement Class that have not personally and timely requested to be excluded from the Settlement Class will be enjoined from proceeding against Lansing Community College with respect to all of the Released Claims.

30.    Lansing Community College shall cause to be prepared and sent all notices that are required by the Class Action Fairness Act of 2005 ("CAFA") as specified in 28 U.S.C. § 1715. The costs associated with providing notice under CAFA shall be paid from the Settlement Fund.

31.    Proposed Settlement Class Counsel and counsel for Lansing Community College shall cooperate promptly and fully in the preparation of such notices, including providing Lansing Community College with any and all information in its possession necessary for the preparation of these notices. Lansing

Community College shall provide, or cause to be provided, courtesy copies of the notices to Proposed Settlement Class Counsel for the purpose of implementing the settlement. Lansing Community College shall provide notice to Proposed Settlement Class Counsel of compliance with the CAFA requirements within ten (10) days of providing notice to Attorneys General under CAFA.

## **Administration of the Settlement**

32.     The Court hereby appoints the settlement administrator proposed by the Parties, Kroll Settlement Administration LLC ("Kroll" or "Settlement Administrator"). Responsibilities of the Settlement Administrator shall include: (a) establishing a post office box for purposes of communicating with Settlement Class Members; (b) disseminating notice to the Class; (c) developing a website to enable Settlement Class Members to access documents; (d) accepting and maintaining documents sent from Settlement Class Members relating to settlement administration; and (e) distributing settlement checks to Settlement Class Members. Pursuant to the Settlement Agreement, the Settlement Administrator and costs of administration shall be paid from the Settlement Fund.

33.     In the event the Settlement Agreement and the proposed Settlement are terminated in accordance with the applicable provisions of the Settlement Agreement—the Settlement Agreement, the proposed Settlement, and all related proceedings shall, except as expressly provided to the contrary in the Settlement

Agreement, become null and void, shall have no further force and effect, and Settlement Class Members shall retain all of their current rights to assert any and all claims against Lansing Community College and any other Released Entity, and Lansing Community College and any other Released Entities shall retain any and all of their current defenses and arguments thereto (including but not limited to arguments that the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are not satisfied for purposes of continued litigation). The Litigation shall thereupon revert forthwith to its respective procedural and substantive status prior to the date of execution of the Settlement Agreement and shall proceed as if the Settlement Agreement and all other related orders and papers had not been executed.

34.    Neither this Order nor the Settlement Agreement nor any other settlement-related document nor anything contained herein or therein or contemplated hereby or thereby nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement or herein or in any other settlement-related document, shall constitute, be construed as or be deemed to be evidence of or an admission or concession by Lansing Community College as to the validity of any claim that has been or could have been asserted against it or as to any liability by it as to any matter set forth in this Order, or as to the propriety of class certification for any purposes other than for purposes of the current proposed Settlement.

**IT IS SO ORDERED.**


Dated: _____          _____

The Honorable Paul L. Maloney
United States District Court Judge

EXHIBIT E

**COURT APPROVED LEGAL NOTICE**

**Lansing Community College ("LCC")
Data Breach Litigation**

*In Re Lansing Community College Data Breach
Litigation, Case No. 1:23-cv-00738 (W.D. Mich.)*

## As a Result of the LANSING COMMUNITY COLLEGE DATA BREACH, You are Eligible for a CASH PAYMENT.

*This is not a solicitation from a lawyer.*

## This is NOT a Claim Form.

## For more information about the Settlement and how to file a Claim Form visit or call:

www.xxxxxxxxx.com

1-XXX-XXX-XXXX

In re Lansing Community College
Data Breach Litigation
c/o Kroll Settlement Administration
PO Box 225391
New York, NY 10150-5391

Forwarding Service Requested

Postal Service: Please do not mark barcode
Claim No.:

[CLAIMANT INFO]

---

A proposed Settlement of a class action lawsuit arising out of a data security incident has been reached with Lansing Community College ("LCC"). Between December 25, 2022, and March 15, 2023, an unauthorized actor was able to access files stored on LCC's computer systems. As a result, Personal Information of individuals may have been accessed (the "Data Security Incident"). Impacted Personal Information may have included names and Social Security numbers relating to LCC employees, students, potential students, vendors, and others. Plaintiffs claim that LCC was negligent and otherwise violated the law in allowing the Data Security Incident to occur. LCC denies any wrongdoing. Plaintiffs and LCC have reached an agreement to settle these claims.
**Who Is Included?** The Court decided that Class Members include all natural persons whose Personal Information was compromised in the Data Security Incident.
**What Does the Settlement Provide?** The Settlement establishes a $1,450,000.00 Settlement Fund which will be used to pay for costs of Notice and administration, Service Awards to the Class Representatives, Attorneys' Fee Award and Costs, and the Settlement relief to Class Members. Also, LCC has agreed to undertake certain remedial measures and enhanced data security measures. Class Members may only elect **ONE** of the Settlement benefits described below:

- **Documented Loss Payments** – reimbursement for Actual Out-of-Pocket Losses and Attested Time, i.e., time and money spent or lost, that is more likely than not related to the LCC Data Security Incident (up to $2,000.00 per individual), not otherwise reimbursable by insurance; **OR**
- **Alternative Cash Payments** – a pro rata cash payment, the amount of which will depend on the number of Class Members who participate in the Settlement and the type of Settlement relief selected by Class Members

**How to Get Benefits:** You must complete and file a Claim Form and Release online or by mail postmarked by **xxxx XX, 2024**, including required documentation. You can file your claim online at **www.xxxxxxxxx.com**. You may also get a paper Claim Form at the above settlement website, or by calling the toll-free number below, and submit by U.S. mail.
**Your Other Options.** If you do not want to be legally bound by the Settlement, you must exclude yourself by **xxxx XX, 2024**. If you do not exclude yourself, you will release any claims you may have against LCC or Released Parties (as defined in the Settlement Agreement) related to the LCC Data Security Incident, as more fully described in the Settlement Agreement, available at the settlement website. If you do not exclude yourself, you may object to the Settlement by **xxxx XX, 2024**. Please review the Long Form Notice on the Settlement Website for further details.
**The Final Approval Hearing.** The Court has scheduled a Final Approval Hearing in this case (*In re Lansing Community College Data Breach Litigation*, Case No. 1:23-cv-00738 (W.D. Mich.)) for **xxxx XX, 2024 at xx:xx am/pm at the Kalamazoo Federal Courthouse**, to consider: whether to approve the Settlement, Service Awards, attorneys' fees and expenses, as well as any objections. You or your attorney may attend and ask to appear at the hearing, but you are not required to do so. The hearing may be held remotely, so please check the settlement website for those details.
**More Information.** Complete information about your rights and options, as well as the Claim Form and Release, the Long Form Notice, and Settlement Agreement are available at **www.xxxxxxxxx.com**, or by calling toll free 1-XXX-XXX-XXXX.